

**IN THE**
**TENTH COURT OF APPEALS**

**No. 10-15-00273-CV**

**ANNETTE KNOPF AND STANLEY GRAY,**

                **Appellants**

 **v.**

**WILLIAM R. GRAY, KAREN A. GRAY AND**
**POLASEK FARMS, LLC,**

                **Appellees**

**From the 82nd District Court**
**Robertson County, Texas**
**Trial Court No. 14-09-19619-CV**

## DISSENTING OPINION

The issue herein is a question of fact that is not appropriate for disposition by summary judgment. There is no mistaking what the testator wanted to do. She was quite clear about that. The question is whether she accomplished on paper what she did within her mind. And the Court recognizes that the proper question is what did the testator intend. It is clear she was working from copies of at least two different wills. And for every interpretation of a word or phrase the Court mentions to support their conclusion,

I could offer a different interpretation of the same word or phrase based upon the content of the will that would support a different understanding and result. But I can count. There are two votes to affirm the trial court and only one to reverse. There is thus nothing to be gained by going through a lengthy interpretative analysis in this type proceeding in which I agree with virtually every statement of what the law is, but disagree with the manner in which that law is applied. The point is that if there are two logical interpretations upon which admissible facts would be relevant, and I believe there is, it is not proper to resolve the issue by summary judgment.

I must, however, comment on the trial court's determination of a disabling restraint, generally referred to as an unreasonable restraint on alienation, that seems to have been the basis of the trial court's determination that disposition by summary judgment was proper. This doctrine has its genesis in the year 1290 with the passage of the Quia Emptores, but has no application in this case. As noted by the Court, the trial court found the relevant clause involved a disabling restraint which was void. Having found the restraint void, the trial court then determined that the only bequest made was to the decedent's son. But there is no disabling restraint in this will. Rather, the referenced clause is a limitation on the estate granted. There is a difference.

A disabling restraint can be thought of as an effort to limit the ability to sell something you own, normally created at the time that the property is given to you and frequently the restraint is to whom it can be conveyed. But a limitation on the gift, the

extent of the property given, is the inalienable right of the owner of the property. An owner by deed or contract, or a decedent by will has every right to give, or convey, less than all of the property rights to one person and the rest of the property rights in the same property to someone else. We see this all the time. The most common three forms are leases, trusts, and life estates.

In this instance, the argument of the appellant is that the mother gave her son the property while he was alive and she gave the property to his children (the decedent's grandchildren) to take possession thereof upon his death. In the hallowed halls of an appellate court, we know these as a life estate and a remainder interest; but in a kitchen table will, those labels need not be used to achieve the same gifts.

And during his life, the son could do anything he wanted to do with his life estate. He could sell it, give it, or keep it. There is no effort to restrain his ability to alienate what he was given. So what is it that he could not sell? And why is this not a restraint on alienation? In a laymen's manner of writing out what she intended, she told him that he could not sell that which she did not give to him, what he did not own; the remainder – because the remainder "passed on" to his children. Thus, this was a limitation of what she was giving him to only a life estate, and legally he would not be able to sell the remainder estate that she gave to her grandchildren.

The Court puts some emphasis on the phrase that the property is not to be sold but "passed on down to your children," calling it an instruction rather than a devise,

stating that "Mrs. Allen does not clearly express an intent to give Bobby a life estate in the property, and upon his death devise the property to her grandchildren." But if it is not clear, then we should not be rewriting her will in a summary judgment proceeding.

The will is relatively short and is set out in its entirety in the appendix to this dissenting opinion. It is full of interpretative questions. As an example of the interpretative issues, note that after she first purports to give everything to her son in the first paragraph identified as "THIRD," she then makes a number of specific bequests, in other paragraphs identified in paragraphs as "FIRST" through "THIRD," and then in an unnumbered paragraph she makes a residuary gift to her son, and then, continuing in more unnumbered paragraphs, she makes some additional specific bequests. That is why determining her intent from the entire document rather than attempting to carve out and over–analyze a single provision is so critical.

Finally, I cannot fail to mention the critical language that a jury would undoubtedly put a great deal of emphasis on that the Court fails to mention at all. The testator provides for a contingent bequest in the event that her son is unable to accept his inheritance, and in this context it does not matter what that inheritance is; a fee simple in the tract or a life estate. In the clause giving the contingent bequest of the son's inheritance to the grandchildren, she uses the same phrase "passed on" to the grandchildren. This is the phrase the Court says is merely an instruction in the bequest to the son; but in the contingent bequest, it is clearly used as granting language, a gift, of

her property to her grandchildren. So in the final analysis, a fact finder should be the one to determine if this testator, in this will, used the phrase "passed on" as words of devise or merely, as the Court holds as a matter of law, as an instruction. But, of course, if the trial court intended to hold that these were merely words of instruction, it was not necessary to hold the clause void as an unreasonable restraint on alienation.

Alternatively, if I am wrong and this is not a fact question, I would construe the terms of the will on their face and hold that the contingent beneficiary clause informs of her meaning of "passed on" and when that meaning is thus applied to the gift to her son, that gift is a gift of a life estate and a gift of the remainder to her grandchildren.[1]

Accordingly, I would reverse the trial court's judgment and remand this proceeding to the trial court. Because the Court does not, I respectfully dissent.


TOM GRAY
Chief Justice

Dissenting opinion delivered and filed January 11, 2017

---

[1] I also note she follows the gift of what I would hold is a gift of a life estate to her son with what is clearly an instruction: "Take care of it …" This is a classic instruction to the recipient of a life estate and is in fact a legal obligation of the owner of a life estate.

## APPENDIX TO DISSENTING OPINION

## LAST WILL AND TESTAMENT

I, VADA WALLACE ALLEN, presently residing on Route 3, Thornton, Texas do hereby make, publish and declare this to be MY LAST WILL AND TESTAMENT and do hereby revoke any and all wills and codicles heretofore made by me.

FIRST: I was married to Clinton (Gunny) Allen on May 15, 1943

SECOND: I order and direct that my just debts and funeral expenses be paid as soon as pratical after my death.

THIRD: I give all my estate to my son BOBBY GRAY.

FOURTH: I nominate and appoint my son BOBBY GRAY as Executor of this my will and Testament. I further direct that my son BOBBY GRAY be nominated as Executor of my Estate. I further direct that my son BOBBY GRAY not be required to post bond for his faithful performance of his duties.

FIRST: To my granddaughter, ANNETTE KNOPF, I leave the old Allen home place and FIVE (5) acres of land (This does not include the stock pen) for a week-end home. This not to be sold, but to be passed on or given to her natural born children.

Also I give to her lot seventeen (17) on Lake Limestone.

I also leave to her two thousand dollars ($2,000.00) out of my certificate of deposit in the Franklin bank. The C.D. is in the name of VADA ALLEN.

Second: To my granddaughter ALLISON KILWAY I give ten and one-half (10.5) acres known as Ronie waller place in Robertson, County, Texas. This land not to be sold but to be passed on or given to her natural born children.

Also I give to her lot sixteen (16) on Lake Limestone valued at $9,500.00.

Also I leave to her two thousand dollars $2,000.00) out of a certificate of deposit in the Franklin Bank. It is in the name of Vada Allen.

THIRD: To my grandson STANLEY GRAY I leave to him seven and one-half acres (7.5) of land known as Tommy Hammond Land, Robertson County, Texas with small trailer house, this not to be sold but handed down to his natural born children, if he has no children the property is to be give to his nieces and nephews.

Also I leave to him two thousand dollars ($2,000.00) for a certificate of deposit.

Also I leave to him lot nineteen (19) on Lake Limestone.

Also I leave to him, my grandson Stanley Gray the house in Huntsville, Texas 2214 Easley Street.

Also I leave to him four (4) cows, with the one he has making him a total of five (5) cows.

Also I give to Stanley Gray my Car, ----Understand this is not to be sold, but passed on or given to your natural born children.

NOW BOBBY I leave the rest to you, everything, certificates of deposit, land, cattle and machinery, Understand the land is not to be sold but passed on down to your children, ANNETTE KNOPF, ALLISON KILWAY, AND STANLEY GRAY. TAKE CARE OF IT AND TRY TO BE HAPPY.

To my niece PATSY CORNELIUS I leave the lot between her and PATE.

Also I leave to her the right to stay at the Camp House anytime she wishes to. This is a lifetime priveledge to her.

In the event something should happen that my son BOBBY GRAY CAN NOT accept his inheritance then it shall be passed on to his three (3) children, ANNETTE KNOPF, ALLISON KILWAY and STANLEY GREY.

IN THE EVENT OF BOBBY GREY, EXECUTOR NAMED IN THE ABOVE WILL, IS UNABLE TO SERVE, THE ALTERNATES ARE TO BE PATSY CORNEILUS AND HAROLD KIRK WATSON.

_____/s/_____
VADA WALLACE ALLEN------Testor

Signed, sealed, published and declared to be her LAST WILL AND TESTAMENT by the herein named Testor in the presence of us, who in her presence and at her request and in the presence of each other have hereunto subscribed our names as witnesses:

(1) Lillian B. Baldwin of R#3 Box 90 Thornton TX 76687
(2) Billy R. Baldwin of R#3 Box 90 Thornton TX 76687
(3) James B. Witt, Jr. of P.O.B. 1391, Hilltop Lakes, TX 77871

## AFFIDAVIT

State of Texas
County of Leon

Personally appeared (1) Lillian Baldwin, (2) Billy R. Baldwin and (3) James B. Witt, Jr. who being duly sworned, depose and say that they attested to said WILL and they subscribed the same at the request and in the presence of the said Testor and each other, and the said Testor signed said will in their presence and deponents further state at the time of the execution of said will Testor appeared to be of legal age and sound of mind, and memory and there was no sign of undue influence.

ITNESS MY HAND this 1st day of April A.D. 1993.

Marion O. Griffin
Notary Public

(notary seal)

Vol. 69 page 516

(seal) CERTIFIED COPY
This is a true and correct copy
Of the original filed in
Robertson County Clerk's Office
Kathryn Nickelson Brimhall