PER CURIAM
This case involves the construction of a will bequest of a tract of land. The primary issue presented is whether the testator intended to devise a fee-simple interest or a life-estate interest to her son. Both the trial court and the court of appeals held that the will unambiguously devised a fee-simple interest, entitling the son to summary judgment. We disagree and reverse the court of appeals' judgment.
Vada Wallace Allen's will disposed of her entire estate, including the land at issue in this case-approximately 316 acres of land in Robertson County. The provision through which she devised that land states:
NOW BOBBY I leave the rest to you, everything, certificates of deposit, land, cattle and machinery, Understand the land is not to be sold but passed on down to your children, ANNETTE KNOPF, ALLISON KILWAY, AND STANLEY GRAY. TAKE CARE OF IT AND TRY TO BE HAPPY.
The provision thus begins with a residuary bequest to her son, William Robert "Bobby" Gray.[1] That residuary bequest is immediately followed by instructional language referencing the "land" included in the residuary and Bobby's children. Two of those children, Annette Knopf and Stanley Gray (collectively, Knopf), are the petitioners here.[2]
Bobby and his wife, Karen, conveyed the land at issue in fee simple to Polasek Farms, LLC, via multiple warranty deeds. Knopf sued Bobby, Karen, and Polasek Farms (who collectively are the respondents here), seeking a declaratory judgment that Allen devised only a life estate to Bobby, thus precluding him from delivering a greater interest to Polasek Farms.[3]
Polasek Farms and Knopf filed cross-motions for summary judgment. The trial court granted Polasek Farms' motion in two separate rulings and rendered final judgment for the respondents, finding that the contested provision contained an invalid disabling restraint, the will vested Bobby with a fee-simple interest in the property, and Knopf received no remainder interest.[4] A divided court of appeals *545 affirmed, agreeing with the trial court's findings and concluding that the will's language regarding passing the land on down to the children was merely an instruction to Bobby rather than a gift to the children. 541 S.W.3d 200, ----, 2017 WL 131863 (Tex. App.-Waco 2017) (mem. op.). The dissenting justice would have held that the provision's meaning was ambiguous and thus improper for resolution on summary judgment. Id. at ---- (Gray, C.J., dissenting).
We review summary judgments de novo. Valence Operating Co. v. Dorsett , 164 S.W.3d 656, 661 (Tex. 2005). When we review an order on cross-motions for summary judgment that grants one and denies the other, as here, we resolve all questions presented and "render[ ] the judgment the trial court should have rendered." Id. A court must construe a will as a matter of law if it has a clear meaning. El Paso Nat'l Bank v. Shriner's Hosp. for Crippled Children , 615 S.W.2d 184, 185 (Tex. 1981). However, when a will's meaning is ambiguous, its interpretation becomes a fact issue for which summary judgment is inappropriate. See White v. Moore , 760 S.W.2d 242, 243 (Tex. 1988) (citing Coker v. Coker , 650 S.W.2d 391, 394 (Tex. 1983) ). A will is ambiguous when it is subject to more than one reasonable interpretation or its meaning is simply uncertain. See El Paso Nat'l Bank , 615 S.W.2d at 185. Whether a will is ambiguous is a question of law for the court. In re Estate of Slaughter , 305 S.W.3d 804, 808 (Tex. App.-Texarkana 2010, no pet.) ; see Kelley-Coppedge, Inc. v. Highlands Ins. Co. , 980 S.W.2d 462, 464 (Tex. 1998) (holding same regarding contract construction).
The cardinal rule of will construction is to ascertain the testator's intent and to enforce that intent to the extent allowed by law. Sellers v. Powers , 426 S.W.2d 533, 536 (Tex. 1968) ; see also Bergin v. Bergin , 159 Tex. 83, 315 S.W.2d 943, 946 (1958). We look to the instrument's language, considering its provisions as a whole and attempting to harmonize them so as to give effect to the will's overall intent. Stephens v. Beard , 485 S.W.3d 914, 916 (Tex. 2016) (citations omitted); Bergin , 315 S.W.2d at 946-47. We interpret the words in a will as a layperson would use them absent evidence that the testator received legal assistance in drafting the will or was otherwise familiar with technical meanings. Bergin , 315 S.W.2d at 946.
Here, the parties dispute whether Allen intended to devise to Bobby a fee-simple interest in the land at issue or only a life estate. "An estate in land that is conveyed or devised is a fee simple unless the estate is limited by express words," TEX. PROP. CODE § 5.001(a), but the law does not require any specific words or formalities to create a life estate, see Welch v. Straach , 531 S.W.2d 319, 321 (Tex. 1975). Therefore, the words used in the will must only evidence intent to create what lawyers know as a life estate. See Bergin , 315 S.W.2d at 947. A life estate is generally defined as an "estate held only for the duration of a specified person's life." Life Estate , BLACK'S LAW DICTIONARY (10th ed. 2014). Thus, a will creates a life estate "where the language of the instrument manifests an intention on the part of the grantor or testator to pass to a grantee or devisee a right to possess, use, or enjoy property during the period of the grantee's life." Fin. Freedom Senior Funding Corp. v. Horrocks , 294 S.W.3d 749, 755 (Tex. App.-Houston [14th Dist.] 2009, no pet.).
As noted, the contested provision in Allen's will states:
NOW BOBBY I leave the rest to you, everything, certificates of deposit, land, cattle and machinery, Understand the land is not to be sold but passed on *546 down to your children, ANNETTE KNOPF, ALLISON KILWAY, AND STANLEY GRAY. TAKE CARE OF IT AND TRY TO BE HAPPY.
Knopf argues that the instructional language in the second clause, read in conjunction with other language throughout the will, demonstrates Allen's intent to grant Bobby a life estate with the remainder interest going to her grandchildren. The respondents counter that the instructional language confirms Allen's intent to devise the land to Bobby in fee simple. In the alternative, they argue that the instructional language either constitutes an invalid disabling restraint, is nontestamentary, or is technically insufficient to create a life estate.[5]
Beginning with the contested provision itself, the parties focus largely on the meaning of the specific phrase "passed on down." However, this line of semantic argument misses the analytical forest for the trees. The provision's meaning depends on its overall intent, so narrow concentration on the possible meanings of three words is a diversion. We need only read the provision as a whole to see a layperson's clearly expressed intent to create what the law calls a life estate. Reading all three clauses together, Allen grants the land to Bobby subject to the limitations that he not sell it, that he take care of it, and that it be passed down to his children. This represents the essence of a life estate; a life tenant's interest in the property is limited by the general requirement that he preserve the remainder interest unless otherwise authorized in the will. See, e.g. , Richardson v. McCloskey , 276 S.W. 680, 685 (Tex. 1925) (stating that life tenants take the property's benefits with corresponding burdens of repair and upkeep); Moody v. Pitts , 708 S.W.2d 930, 936 (Tex. App.-Corpus Christi 1986, no writ) (recognizing the duty of life tenants not to destroy remainder interests except as authorized by the will); Maxwell v. Harrell , 183 S.W.2d 577, 580 (Tex. Civ. App.-Austin 1944, writ ref'd w.o.m.) (noting that a life tenant cannot alienate property to "defeat the estate of the remaindermen"). Allen's words in the contested provision unambiguously refer to elements of a life estate and designate her grandchildren, the petitioners, as the remaindermen. The language thus clearly demonstrates that the phrase "passed on down," as used here, encompasses a transfer upon Bobby's death.
Reading the provision in the context of the entire document only cements this conclusion. See Stephens , 485 S.W.3d at 916. Allen devised her entire estate to various family members, including approximately one dozen specific bequests to her grandchildren. She also selectively repeated the sentiment that certain property not be sold but be "passed on" or "given" or "handed down" to the devisees' children. Thus, the will as a whole indicates an intent to keep her property in her family and to bequeath *547 certain property to multiple generations. Reading the contested provision to grant Bobby a life estate and to grant Knopf the remainder interest is fully consistent with the overall intent of the document.
The respondents attempt to rebut Knopf's interpretation by characterizing the words "the land is not to be sold" as an invalid disabling restraint on sale, as the trial court and court of appeals held. A disabling restraint is an attempt by the grantor, through the terms of a transfer, "to invalidate a [grantee's] later transfer of that [granted] interest, in whole or in part." RESTATEMENT (SECOND) OF PROPERTY § 3.1 (Am. Law Inst. 1983).[6] The respondents would thus have us pluck a fragment out of context, construe it in isolation, strike it, and then return to the remaining text. This proposed approach inverts the analytical process and defies our rules of will construction. The nature of a granted interest (e.g., fee simple versus life estate) must be resolved before a court may determine whether a restraint on that interest is valid because the restraint's validity depends on the type of interest granted. See Bergin , 315 S.W.2d at 947. To the point, inherent in a life estate is a restraint on alienation of the remainder interest. Id. Accordingly, the phrase "the land is not to be sold" is an integral part of Allen's expression of intent to create a life estate. The respondents' suggested methodology would also violate our contextual approach to will construction and our rule against rewriting wills to arrive at a presumed intent. Shriner's Hosp. for Crippled Children v. Stahl , 610 S.W.2d 147, 151 (Tex. 1980) (noting that intent is derived from the words actually used and that courts cannot redraft wills to reflect presumed intent).
The respondents' remaining arguments also ultimately beg the question of the contested provision's intended meaning. For example, they contend that the instructional language following the residuary bequest is precatory, or nontestamentary, language with no legal effect.[7] But whether language is precatory or testamentary is itself a question of intent. See Bergin , 315 S.W.2d at 947. Our determination that the provision clearly expresses Allen's intent to grant a life estate establishes that the instructional language is testamentary. Moreover, the fact that Allen selectively used these phrases evidences that she intended they have some effect.
Finally, the respondents also claim that any ambiguity in the contested provision favors them because a testator must clearly reduce a bequest from a fee simple to a life estate. See ids="2257089,10179957" index="28" url="https://cite.case.law/sw2d/315/943/">id. at 946. However, in light of our holding that the provision unambiguously conveyed a life estate, we need not address this argument.
* * * *
Accordingly, without hearing oral argument, see TEX. R. APP. P. 59.1, we grant Knopf's petition for review, reverse the court of appeals' judgment, and render judgment that the will granted Bobby Gray a life estate and the petitioners the remainder interest in the property at issue. The case is remanded to the trial court for further proceedings consistent with this opinion.

A residuary bequest is "[a] bequest of the remainder of the testator's estate after the payment of the debts, legacies, and specific bequests." Residuary Bequest , Black's Law Dictionary (10th ed. 2014).

Allison Kilway, Bobby's third child, reportedly died before this suit was filed.

Knopf also claimed Bobby, as the will's executor, breached the fiduciary duties he owed to them as will beneficiaries.

The trial court also held that, in light of its ruling that Knopf received no remainder interest, Bobby did not breach any fiduciary duty owed to Knopf.

The respondents also assert that Knopf waived various other interpretive arguments by failing to raise them in the court of appeals. We disagree. We have instructed that "[a]ppellate briefs are to be construed reasonably, yet liberally" to avoid losing appellate review by waiver. Perry v. Cohen , 272 S.W.3d 585, 587 (Tex. 2008). Moreover, the Rules of Appellate Procedure state that an issue covers all subsidiary questions fairly included, Tex. R. App. P. 38.1, and general points of error on appeal from summary judgment preserve arguments broadly, see Plexchem Int'l, Inc. v. Harris Cty. Appraisal Dist. , 922 S.W.2d 930, 930-31 (Tex. 1996) (citing Malooly Bros. v. Napier , 461 S.W.2d 119, 121 (Tex. 1970) ). Knopf broadly framed the issue on appeal as whether the trial court erred in granting summary judgment in Gray's favor, and the entire case is about ascertaining Allen's intent with respect to the contested provision. To the extent Knopf presents new specific arguments pertaining to that goal, they are fairly included within Knopf's previously raised issues and arguments.

We have previously looked to the Restatement for guidance on disabling restraints. See Sonny Arnold, Inc. v. Sentry Sav. Assocs. , 633 S.W.2d 811, 813-14 (Tex. 1982).

Precatory language requests, recommends, or expresses a desire rather than a command. Precatory , Black's Law Dictionary (10th ed. 2014).