**AFFIRM; and Opinion Filed June 4, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00476-CV

**LYNDA BLISS, Appellant**
**V.**
**BANK OF AMERICA N.A. AND**
**SANTANDER BANK, N.A., F/K/A SOVEREIGN BANK, N.A., Appellees**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-04804-2016**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Osborne

Appellant Lynda Bliss filed suit against appellees Bank of America N.A. and Santander Bank, N.A., formerly known as Sovereign Bank, N.A. ("Banks") seeking a declaratory judgment "that the statute of limitations has long ago run" on any right to enforce a real property lien on Bliss's homestead. Bliss also asserted a claim under the Texas Debt Collection Act, and sought a temporary restraining order and injunctive relief to prevent foreclosure of the lien. The trial court granted summary judgment for the Banks on all of Bliss's claims. Because the Banks established their right to judgment as a matter of law, we affirm.

## BACKGROUND

Summary judgment evidence showed that Bliss purchased real property in Plano in 2002, executing a promissory note in the amount of $377,150 that was secured by a deed of trust in favor of the Banks' predecessors.[1] Bliss has not made any payments on the loan since 2009.

On June 11, 2010, the Banks sent Bliss a "Notice of Substitute Trustee's Sale," providing that the property would be sold on July 6, 2010. In her petition, Bliss pleaded that "the loan in this case was accelerated on June 11, 2010." The sale did not take place, however, and Bliss filed a bankruptcy petition on September 9, 2010. This bankruptcy proceeding was dismissed on February 15, 2011.

On September 11, 2011, Bliss sued the Banks to quiet title to the property and for injunctive relief to prevent a foreclosure sale. In that suit, Bliss obtained a temporary restraining order on October 3, 2011 that was to remain in effect until a hearing scheduled for October 17, 2011. In the interim, Bliss amended her petition to add an allegation that the statute of limitations had run on the Banks' right to foreclose, and the Banks filed a notice of removal to federal court on October 21, 2011. Final judgment was rendered by the United States District Court "[i]n accordance with the parties' Joint Stipulation of Voluntary Dismissal" on January 6, 2012.

Bliss again filed a bankruptcy petition under Chapter 13 of the United States Code on February 7, 2012. The bankruptcy case was converted to a Chapter 7 proceeding on June 25, 2012. An order discharging the debtor was entered on September 26, 2012, and the case was closed on March 21, 2013.

On April 23, 2015, the Banks sent Bliss a notice of default. On September 22, 2015, the Banks sent Bliss a notice of acceleration. The property was posted for foreclosure on September

---

[1] Because there is no dispute regarding the various assignments and transfers of the note and deed of trust, we do not detail them here. All references to "the Banks" include their predecessors on the relevant dates.

16, 2016, with a sale to take place on November 1, 2016. On October 31, 2016, Bliss filed this suit and obtained a temporary restraining order to enjoin the Banks from foreclosing on the property.

In her petition, Bliss sought declaratory and injunctive relief and attorney's fees. She also alleged a claim under Chapter 392 of the Texas Finance Code. *See* TEX. FIN. CODE § 392.304 (prohibiting use of fraudulent, deceptive or misleading representations in debt collection). Her claims were based on her allegation that limitations began to run on June 11, 2010, when the Banks accelerated the note and posted the property for foreclosure. The Banks moved for summary judgment on all of Bliss's claims on the ground that they were not barred from foreclosing on the property as a matter of law. The Banks argued that the April 23, 2015 notice of default acted as an abandonment of all prior accelerations. The Banks also argued that limitations had not run when they sent the April 23, 2015 notice even if, as Bliss contended, their cause of action for foreclosure of the deed of trust accrued on June 11, 2010, the date of notice of substitute trustee's sale. The Banks contended that limitations was tolled during the two bankruptcy proceedings and for the pendency of the restraining order entered in the 2011 litigation. The Banks' motion included a table showing that although almost five years had elapsed between June 11, 2010 and April 23, 2015, the statute of limitations was tolled for more than a year during that period, making their notice timely.

The trial court granted the Banks' motion. This appeal followed.

## STANDARDS OF REVIEW

In seven issues, Bliss contends the trial court erred by granting the Banks' motion to strike portions of her summary judgment affidavit and by granting summary judgment on her causes of action. We review summary judgments de novo. *Knopf v. Gray*, 545 S.W.3d 542, 545 (Tex. 2018) (per curiam). When we review a traditional summary judgment for a defendant, we determine whether the defendant conclusively disproved an element of the plaintiff's claim or conclusively

proved every element of an affirmative defense. *Durham v. Children's Med. Ctr. of Dallas*, 488 S.W.3d 485, 489 (Tex. App.—Dallas 2016, pet. denied). We take evidence favorable to the nonmovant as true, and we indulge every reasonable inference and resolve every doubt in the nonmovant's favor. *Id.* A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Id.*

We review the admission or exclusion of evidence for abuse of discretion. *Estate of Finney*, 424 S.W.3d 608, 612 (Tex. App.—Dallas 2013, no pet.). To reverse a judgment based on a claimed error in admitting or excluding evidence, a party must show that the error probably resulted in the rendition of an improper judgment. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). In determining if the excluded evidence probably resulted in an improper judgment, we review the entire record. *Id.*

## DISCUSSION

### 1. Applicable limitations periods

Bliss's seven issues arise from her contention that limitations has run on the Banks' cause of action for foreclosure. A person must bring suit for foreclosure of a real property lien not later than four years after the day the cause of action accrues. TEX. CIV. PRAC. & REM. CODE § 16.035(a). A sale of real property under a deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues. CIV. PRAC. & REM. § 16.035(b). If a note or obligation payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment. CIV. PRAC. & REM. § 16.035(e).

## 2. Exclusion of evidence

Before addressing Bliss's limitations arguments, we consider whether the trial court erred by striking statements in paragraphs 5 and 6 of Bliss's summary judgment affidavit that she received a notice of acceleration on or about July 17, 2009. In her affidavit, Bliss testified:

> 5. On or about July 17, 2009, an Appointment of Substitute Trustee was filed in the public real estate records of Collin County, Texas regarding the Property. A true and correct copy of this document is attached to this affidavit. On approximately the same date, I received a Notice of Acceleration and Notice of Foreclosure regarding the Property. I have searched my records, and cannot locate either document at this time.
>
> 6. Prior to July 17, 2009, I received Notices of Intent to Accelerate and at least one prior Notice of Acceleration regarding the Property. I have searched my records, and cannot locate the prior Notice of Acceleration regarding the Property.

The Banks moved to strike Bliss's statements because they were "factually inaccurate or incomplete, conclusory, and lack supporting evidence," and because they were not relevant. The Banks argued that Bliss did not provide "documentary or other factual evidence to support her statements that she received notices of acceleration on or about July 17, 2009 and/or prior to that date." The Banks also argued that in the 2011 litigation, Bliss dismissed with prejudice all claims relating to pre-October 2011 efforts to foreclose on the property.[2] And the Banks argued that Bliss's statements were not relevant to her allegations in her petition that the Banks accelerated the note and posted the property for foreclosure on June 11, 2010.

Rule of evidence 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." TEX. R. EVID. 401; *see also Texas Capital Bank v. Asche*, No. 05-15-00102-CV, 2017 WL 655923, at \*17 (Tex. App.—Dallas Feb. 17, 2017, pet. dism'd) (mem. op.) (citing rule). Although it is apparent from the parties' briefs and from the record that they have

---

[2] The Banks' summary judgment proof included the final judgment from the 2011 litigation.

–5–

been engaged in a variety of legal proceedings dating back to 2003 arising from Bliss's failure to make payments on the note, Bliss's pleadings in this lawsuit complain only of the Banks' efforts to foreclose in 2016 based on a 2010 acceleration. After reviewing the entire record, we conclude that the trial court did not abuse its discretion by excluding Bliss's testimony regarding a notice of acceleration she allegedly received in 2009 on the ground that the testimony was not relevant. *See Interstate Northborough P'ship*, 66 S.W.3d at 220. We decide Bliss's sixth issue against her.

### 3. Effect of April 23, 2015 letter

In her fifth issue, Bliss argues that the April 23, 2015 letter was not an abandonment of the Banks' previous accelerations. She contends that the Banks accelerated the note on June 11, 2010 when they sent her notice that the property would be sold at a substitute trustee's sale on July 6, 2010. She argues that because the April 23, 2015 letter does not state that the 2010 acceleration was abandoned, it does not establish abandonment as a matter of law. Instead, she argues, "the April 23, 2015 letter is more of an offer to abandon the [2010] acceleration if the lesser amount is paid than actual rescission of an earlier acceleration."

If a note or deed of trust secured by real property contains an optional acceleration clause, the action accrues when the holder of the note actually exercises its option to accelerate. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). The holder may abandon the acceleration. *See id.* "If acceleration is abandoned before the limitations period expires, the note's original maturity date is restored and the noteholder is no longer required to foreclose within four years from the date of acceleration." *Bracken v. Wells Fargo Bank, N.A.*, No. 05-16-01334-CV, 2018 WL 1026268, at *3 (Tex. App.—Dallas Feb. 23, 2018, pet. denied) (mem. op.) (quoting *Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 Fed. App'x 677, 679 (5th Cir. 2015) (per curiam)). There is no single form abandonment may take. "In the absence of an express notice of rescission of acceleration, the lender may show abandonment of acceleration by conduct." *Id.* Abandonment

of acceleration cases are based on the law of waiver. *See id.* at *5. Waiver's elements include (1) an existing right, benefit, or advantage held by a party, (2) the party's actual knowledge of its existence, and (3) the party's actual intent to relinquish the right or intentional conduct inconsistent with the right. *Id.*

The April 23, 2015 letter is entitled "Notice of Default and Intent to Accelerate." The letter identifies Bliss's July 29, 2002 note in the original amount of $377,150. In the first paragraph, the letter states that the loan "is in serious default because the required payments have not been made." The letter continues, "The total amount now required to cure this default, in other words, the amount required to bring the loan current, as of the date of this letter is as follows . . . ." The letter then includes a chart showing monthly charges between October 1, 2009 and April 1, 2015. The chart provides "total monthly charges" of $317,728.80, "prior unpaid late charges" of $2,962.09, "total other late charges/fees" of $2,983.03, for a "total due" of $323,673.92. The Banks offered summary judgment evidence that $323,673.92 "was less than the full amount due on the Note at its maturity." The letter continues,

> You have the right to cure the default. To cure the default, on or before June 2, 2015, Bank of America, N.A. must receive the amount of $323,673.92 plus any additional regular monthly payment or payments, late charges, fees and charges, which become due on or before June 2, 2015. . . .

> If the default is not cured on or before June 2, 2015, the mortgage payments **will be accelerated** with the full amount of the loan remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time. As such, the failure to cure the default will result in the foreclosure and sale of your property.

In *Bracken*, the bank accelerated the Brackens' home loan in July 2009. *Bracken*, 2018 WL 1026268, at *1. The parties then "explored various loss mitigation options" that ultimately proved unsuccessful. *Id.* The bank periodically sent the Brackens mortgage statements that requested payment of past-due amounts, not the entire accelerated balance. *Id.* at *4. In February 2011, the bank sent the Brackens a notice of default and intent to accelerate. *Id.* The notice said (1) the

Brackens were in default, (2) they needed to pay the past-due balance to cure the default, and (3) failure to cure would result in acceleration of the loan. *Id.* In 2014, the bank sued the Brackens for judicial foreclosure, and the parties filed cross-motions for summary judgment addressing whether the statute of limitations barred the bank's suit. *Id.* at *1. The trial court granted summary judgment for the bank, and we affirmed. *Id.* at *1, 6. We concluded that the bank conclusively proved abandonment of its 2009 acceleration by the February 2011 notice alone:

> Notwithstanding [the parties'] loss mitigation efforts, the 2011 notice unequivocally manifested an intent to abandon the 2009 acceleration and provided the Brackens with an opportunity to avoid foreclosure if they cured their arrearage. Taking as true all evidence favorable to the Brackens and indulging every reasonable inference in their favor, we conclude that [the bank] conclusively established that it abandoned the 2009 acceleration.

*Id.* at *5. We followed *Bracken* in *Farmehr v. Deutsche Bank National Trust Co.*, No. 05-17-00563-CV, 2018 WL 2749634, at *3–4 (Tex. App.—Dallas May 31, 2018, no pet.) (mem. op.). In *Farmehr*, we explained that the bank sent the debtors "a notice that was substantially the same as the one involved in *Bracken*." *Id.* at *4. Accordingly, we concluded that the bank's notice "conclusively proved abandonment of acceleration, thereby restoring the prior maturity date and cutting off the running of limitations." *Id.* Here, as in *Farmehr*, the Banks' notice was substantially the same as the one in *Bracken. See Bracken*, 2018 WL 1026268, at *5; *Farmehr*, 2018 WL 2749634, at *4. The April 23, 2015 letter said the loan was in default, Bliss needed to pay the past-due balance to cure the default, and failure to cure would result in acceleration. Accordingly, we conclude that the April 23, 2015 notice letter conclusively proved abandonment of acceleration, "thereby restoring the prior maturity date and cutting off the running of limitations." *Farmehr*, 2018 WL 2749634, at *4. We decide Bliss's fifth issue against her.

In reaching our decision, we conclude that the two cases Bliss cites to support her argument are distinguishable. Bliss relies on *Residential Credit Solutions, Inc. v. Burg*, No. 01-15-00067-CV, 2016 WL 3162205, at *4 (Tex. App.—Houston [1st Dist.] June 2, 2016, no pet.) (mem. op.),

–8–

and *Fitzgerald v. Harry*, No. 02-02-330-CV, 2003 WL 22147557, at \*5–6 (Tex. App.—Fort Worth Sept. 18, 2003, no pet.) (mem. op.). In *Burg*, the court concluded that as a matter of law, the lender did not abandon its acceleration where the parties entered into a stipulation that allowed the lender to "take any action reasonably necessary to maintain the pending foreclosure action." *Burg*, 2016 WL 3162205, at \*4. There is no comparable stipulation here. In *Fitzgerald*, the record showed the lender's "unflagging persistence in pursuit of foreclosure after the initial acceleration of the note." *Fitzgerald*, 2003 WL 22147557, at \*5. Here, as we have explained, the Banks sent Bliss a letter that was substantially the same as the notices in *Bracken* and *Farmehr*, compelling our conclusion that the Banks conclusively proved abandonment of the earlier acceleration.

### 4.      Alternative dates for commencement of limitations

In her first and second issues, Bliss contends the limitations period began to run on January 16, 2008 or on July 17, 2009.[3] To support her argument that limitations began to run on January 16, 2008, Bliss relies on her original petition in the 2011 lawsuit she brought against the Banks to obtain injunctive relief against the Banks' earlier efforts to foreclose. In paragraph 17 of that petition, Bliss alleged that "On January 16, 2008, [the Banks] sent [Bliss] a letter notifying [Bliss] that she was still in default and that the 'acceleration is active' on the property." A copy of the 2011 petition was attached as Exhibit H to the Banks' summary judgment motion in this case.[4]

The Banks respond that Bliss pleaded in her original petition in this case that limitations began to run on June 11, 2010. They argue that Bliss did not make any argument in the trial court for any date earlier than June 11, 2010. And they argue that the allegations she made in her 2011

---

[3] In her "issues presented for review," Bliss specifies only two dates (January 16, 2008, or July 17, 2009) earlier than June 11, 2010 on which limitations began to run. In her summary of argument, however, she also states there is "some evidence that limitations began to run" on two additional dates, August 31, 2005, and August 8, 2006. For these dates, as for January 16, 2008, she relies on the amended petition she filed in the 2011 litigation. For the reasons we discuss, we conclude that the allegations she made in that petition do not raise a genuine issue of material fact that limitations began to run on any of these dates.

[4] The Banks attached the petition in partial support of their contention that limitations was tolled when the trial court entered a temporary restraining order in the 2011 litigation. The January 16, 2008 letter referenced in paragraph 17 of the 2011 petition was not attached and is not included in our record.

lawsuit are not evidence. We agree that the copy of Bliss's 2011 petition is not evidence that limitations began to run on January 16, 2008. Even if Bliss had repeated the allegation in her current petition, her allegation would not be summary judgment evidence. *Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 543 (Tex. 1971) (pleadings, even if sworn, do not constitute summary judgment evidence). Although the Banks bore the burden to prove their right to judgment as a matter of law, they were not required to disprove theories that Bliss did not raise in her pleadings or in her summary judgment response. *See, e.g., Simmons v. Priority Bank, N.A.*, No. 05-16-01130-CV, 2018 WL 580264, at *2 (Tex. App.—Dallas Jan. 29, 2018, no pet.) (mem. op.) (where plaintiff in wrongful foreclosure suit did not plead a misrepresentation claim and only "alluded" to misrepresentation in her summary judgment response, claim was not presented to trial court, argument on appeal was not preserved, and summary judgment for bank was proper). Because there was no evidence to support Bliss's contention that limitations began to run on January 16, 2008, we decide Bliss's first issue against her.

To support her argument that limitations began to run on July 17, 2009, Bliss relies on her summary judgment affidavit in which she testified that on "approximately" that date, she received a notice of acceleration and a notice of foreclosure. But as we have discussed, the trial court did not err by granting the Banks' motion to strike this portion of Bliss's affidavit. There is no summary judgment evidence to support Bliss's contention that limitations began to run on July 17, 2009. We decide Bliss's second issue against her.

5. **Tolling of limitations**

In her third and fourth issues, Bliss contends that even if limitations began to run on June 11, 2010 and was tolled during the two bankruptcy proceedings, the Banks' claim is barred. She argues that 1,488 days elapsed between June 11, 2010 and April 23, 2015 (the date of the Banks' notice letter), but the limitations period is only 1,461 days, making the Banks' letter 27 days too

late. The Bank counters that 1,198 days elapsed between the two dates when taking into account the periods when limitations was tolled due to Bliss's bankruptcy proceedings and the 2011 temporary injunction.

The largest difference between the parties' calculations is attributable to the tolling period each assigns to the 2012 bankruptcy proceeding. Bliss argues the automatic stay ended as to claims against her homestead when the case was converted from a Chapter 13 to a Chapter 7 proceeding. But she offered no evidence in the trial court to support this proposition. Instead, she relied on the copy of the docket sheet from the 2012 bankruptcy proceeding attached to one of the Banks' summary judgment affidavits. Although the docket sheet reflects that Bliss filed of a "Notice of voluntary conversion to chapter 7" on June 25, 2012, there is no evidence of exemptions Bliss may have claimed regarding the property, no evidence of any objections to any claims by Bliss regarding the property, and no evidence to support her argument that the property was "immediately removed from estate property" on the date of the conversion. Consequently, the Banks established that their April 23, 2015 notice letter was timely, and Bliss failed to raise a genuine issue of material fact on whether limitations had run. When the approximately 90-day period from conversion to the date of discharge is added back in to Bliss's total, the Banks' notice letter on April 23, 2015 was within the limitations period even if, as Bliss contends, the temporary restraining order granted in the 2011 litigation did not result in any tolling of limitations. We decide Bliss's third and fourth issues against her.

### 6.    Bliss's additional causes of action

In her seventh issue, Bliss contends summary judgment was not proper on her cause of action for violation of the Texas Debt Collection Act and her requests for a declaratory judgment, an injunction, and attorney's fees. Because each of these causes of action is dependent on Bliss's contention that limitations bars the Banks from recovery on the note and deed of trust, the trial

court did not err by granting the Banks' motion for summary judgment on them. We decide Bliss's

seventh issue against her.

## CONCLUSION

We affirm the trial court's judgment.


/Leslie Osborne/
LESLIE OSBORNE
JUSTICE


180476F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

LYNDA BLISS, Appellant

No. 05-18-00476-CV     V.

BANK OF AMERICA N.A. AND
SANTANDER BANK, N.A., F/K/A
SOVEREIGN BANK, N.A., Appellees

On Appeal from the 401st Judicial District
Court, Collin County, Texas
Trial Court Cause No. 401-04804-2016.
Opinion delivered by Justice Osborne;
Justices Schenck and Reichek,
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Bank of America N.A. and Santander Bank, N.A., f/k/a Sovereign Bank, N.A. recover their costs of this appeal from appellant Lynda Bliss.

Judgment entered this 4th day of June, 2019.