

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00708-CV

**IN THE ESTATE OF** Marilyn Frances **MARTINEZ**

From the County Court at Law No. 2, Bexar County, Texas
Trial Court No. 2021PC0540
Honorable Sandee Bryan Marion, Judge Presiding[1]

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:         Rebeca C. Martinez, Chief Justice
                 Luz Elena D. Chapa, Justice
                 Beth Watkins, Justice

Delivered and Filed: February 21, 2024

AFFIRMED

Appellant Clifton Ewers appeals the trial court's August 18, 2022 order finding his mother Marilyn Frances Martinez's holographic will devised certain property to his daughter appellee Desiray Ewers. He argues the trial court improperly construed Marilyn's will. We affirm.

## BACKGROUND

Marilyn Martinez died of COVID on November 26, 2020. Less than five days later, her second husband—Raymond Martinez—died too. After a handwritten document was found among Marilyn's belongings, Desiray Ewers sought to admit it to probate as a holographic will. The will was admitted to probate on April 8, 2021, and Desiray was appointed dependent administrator.

---

[1] Sitting by assignment.

In January 2022, Desiray filed a petition for a declaratory judgment, seeking a construction of the will, and specifically seeking a declaration as to whom Marilyn intended certain San Antonio property be devised. During the hearing, Clifton argued Marilyn did not intend to devise two properties, and he was therefore entitled to them as her sole heir. After an August 2022 hearing, the trial court granted the declaratory judgment and construed the will as devising those two properties; one of the two properties went to Desiray, and the other Clifton inherited because Marilyn had devised it to her second husband, who, in legal terms, predeceased her under the Texas Estates Code.

This appeal followed.

## WILL CONSTRUCTION

Clifton argues the trial court incorrectly applied the law to the holographic will. He contends the will did not devise the two properties because the will used "no testamentary language" as to the properties, and no extrinsic evidence was introduced to the contrary. Instead, the will simply listed the addresses and identified who occupied each property. As a result, he argues Marilyn died intestate as to those two properties, and he was entitled to both properties as her sole heir.

### A. Law & Standard of Review

"When a trial court enters a declaratory judgment after a bench trial, the court of appeals applies a sufficiency standard to review the findings of fact and reviews the trial court's conclusions de novo." *In re Est. of Walker*, No. 13-11-00438-CV, 2012 WL 3612525, at *1 (Tex. App.—Corpus Christi Aug. 23, 2012, pet. denied) (mem. op.). "A trial court's conclusions of law may be reversed only if they are erroneous as a matter of law." *Id.* We will uphold conclusions of law on appeal if the judgment is sustainable on any legal theory supported by the evidence. *See, e.g., Land v. Land*, 561 S.W.3d 624, 641 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

A will must be in writing, signed by the testator, and witnessed by two or more people. TEX. EST. CODE § 251.051. However, a holographic will, "a will written wholly in the testator's handwriting[,] is not required to be attested by subscribing witnesses." *Id.* § 251.052. An estate administrator with a legal controversy involving the will "may have a declaration of rights or legal relations in respect to the trust or estate" to, among other things, "ascertain any class of . . . heirs," and "to determine any question arising in the administration of the trust or estate, including questions of construction of wills and other writings." TEX. CIV. PRAC. & REM. CODE § 37.005(1), (3).

"The cardinal rule of will construction is to ascertain the testator's intent and to enforce that intent to the extent allowed by law." *Knopf v. Gray*, 545 S.W.3d 542, 545 (Tex. 2018); *see San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000). "We look to the instrument's language, considering its provisions as a whole and attempting to harmonize them so as to give effect to the will's overall intent." *Knopf*, 545 S.W.3d at 545. "If the true intent can be ascertained from the language of the instrument, then any particular paragraph of the will which, if considered alone, would indicate a contrary intent, must yield to the intention manifested by the whole instrument." *Walker*, 2012 WL 3612525, at *2.

"[A] holographic will should be liberally construed to effect the testator's intent." *In re Est. of Abshire*, No. 02-10-00060-CV, 2011 WL 3671998, at *3 (Tex. App.—Fort Worth Aug. 18, 2011, pet. denied) (mem. op.) (quoting *Trim v. Daniels*, 862 S.W.2d 8, 10 (Tex. App.—Houston [1st Dist.] 1992, writ denied)). We construe the words in a holographic will "as a layperson would use them absent evidence that the testator received legal assistance in drafting the will or was otherwise familiar with technical meanings." *Knopf*, 545 S.W.3d at 545; *see, e.g.*, *In re Est. of Prater*, No. 12-08-00008-CV, 2009 WL 5174740, at *2–4 (Tex. App.—Tyler Dec. 31, 2009, no pet.) (mem. op.) (explaining wills are accorded liberal construction, considerable latitude is

permitted regarding informality with which testatrix may have expressed intention, allowance is made for awkwardness, and language not measured with mathematical precision).

Furthermore, a trial court should reject an interpretation which results in the testator's having "done a useless thing." *Coleman v. Coleman*, 350 S.W.3d 201, 203 (Tex. App.—San Antonio 2011, no pet.). "One of the primary presumptions that guides the interpretation of wills is the disfavor of any construction that would render the decedent intestate. 'The fact that [a testator] left a will implies that [he] did not intend to die intestate.'" *In re Est. of Rogers*, No. 04-06-00555-CV, 2007 WL 1258763, at *2 (Tex. App.—San Antonio May 2, 2007, pet. denied) (mem. op.) (quoting *Ferguson v. Ferguson*, 45 S.W.2d 1096, 1097 (Tex. 1931)).

"A court must construe a will as a matter of law if it has a clear meaning." *Knopf*, 545 S.W.3d at 545; *see Rogers*, 2007 WL 1258763, at *2 ("Absent ambiguity, the construction of a will is a matter of law."). "Whether a will is ambiguous is a question of law for the court." *Knopf*, 545 S.W.3d at 545. "A will is ambiguous when it is subject to more than one reasonable interpretation or its meaning is simply uncertain." *Id.* If "there is no dispute about the meaning of words used in a will, extrinsic evidence will not be received to show that the testatrix intended something outside of the words used." *Lang*, 35 S.W.3d at 639.

### B. Analysis

On August 12, 2022, the trial court held a hearing on the petition for a declaratory judgment to consider, among other things, who was entitled to certain property devised by the will. The trial court found Clifton was Marilyn's sole heir after hearing the testimony of two witnesses and the parties' express agreement to this fact; and after considering Marilyn's husband's death certificate, the trial court also found Marilyn and her second husband were married at the time of her death,

and her husband survived her by 117 hours, three hours short of the 120 hours required by the Estates Code.[2]

The attorneys then proceeded to introduce the holographic will. The first page of the will provides Marilyn's late second husband was "to get everything if I die first to include all my belongings, valuables, jewelry." It then provides: "I will list what special items to give to who." Marilyn devised 69 acres in Cambellton, Texas "[e]qually" to Clifton, Desiray, and Desiray's two siblings. The second page first lists a property located on Peterson Avenue in San Antonio and next to it states: "Desi Lives here." The will then lists a property located on Kingley Drive in San Antonio and states Marilyn and her second husband "live here."

Desiray's counsel explained the listing of the addresses, along with the identifying statements of who lives at each, with the first page statement that Marilyn intended to "list what special items to give to who," demonstrate Marilyn intended to devise the Peterson and Kingley properties in her will to those persons occupying them. Therefore, the Peterson property would go to Desiray, and the Kingley property was devised to Marilyn's second husband. But because he, in legal terms, predeceased her and the will did not contain a residuary clause, under the Estates Code Marilyn died intestate as to the Kingley property. And the Kingley property would therefore pass to Marilyn's sole heir, Clifton. Clifton's counsel argued Marilyn's intent to devise the two properties was not as clear when comparing and contrasting the language listing the addresses and names of the resident occupants with the clear division of the 69-acre Campbellton property. The two properties were therefore not devised via the will and under the Estates Code, both properties should pass to Marilyn's sole heir, Clifton.

---

[2] *See* TEX. EST. CODE § 121.052 ("A person who does not survive a decedent by 120 hours is considered to have predeceased the decedent for purposes of the homestead allowance, exempt property, and intestate succession, and the decedent's heirs are determined accordingly, except as otherwise provided by this chapter.").

The trial court found the Kingley property was "clearly going to be inherited . . . by [Marilyn's] son, Clifton. . . . And on the Peterson property, . . . I do believe that the testatrix's intention was to provide that Desiray receive that property, and the Court so finds." After the hearing, the trial court issued its order granting the Peterson property to Desiray and finding Marilyn's second husband predeceased her, and therefore, Clifton inherited the Kingley property.[3]

Here, it is undisputed the will is Marilyn's holographic will, and neither party introduced extrinsic evidence as to the meaning of any its terms.[4] Nor do the parties dispute that any property not devised by the will became the property of Marilyn's sole heir. The only dispute is whether the trial court correctly construed the will based on the language within the four corners of the document, which is a question of law we review de novo. *See Walker*, 2012 WL 3612525, at *1; *Rogers*, 2007 WL 1258763, at *2.

In reviewing the will's language, considering its provisions as a whole, and attempting to harmonize them so as to give effect to the testatrix's intent, it is clear Marilyn intended to devise the property she listed in the will. *See Knopf*, 545 S.W.3d at 545. Marilyn was a layperson and no evidence was presented she "received legal assistance in drafting the will or was otherwise familiar with technical meanings." *See Knopf*, 545 S.W.3d at 545; *Prater*, 2009 WL 5174740, at *2–4. Although not a paragon of precision, the will plainly states Marilyn's second husband was "to get everything if I die first to include all my belongings, valuables, jewelry." It then provides "I will list what special items to give to who." Marilyn then listed certain property to be devised by the will. Although she did not state to whom the Peterson and Kingley properties would be devised,

---

[3] The trial court also held the will devised the 69-acre property in equal shares to Clifton, Desiray, Ryan Ewers, and Colton Ewers.

[4] No extrinsic evidence of the will was offered by either party. Desiray's counsel explained no extrinsic evidence would be presented to the trial court because "There just really isn't any. The will was found in the decedent's belongings. Nobody knows anything about how it was signed. She didn't discuss it with anybody, so we are really just dealing with the document, Judge."

she did identify by name who lived at each property. And harmonizing that language with her intent as a whole and according the will a liberal construction, we conclude Marilyn intended to devise the two properties to the named persons occupying them. *See Walker*, 2012 WL 3612525, at *1; *Abshire*, 2011 WL 3671998, at *3. This interpretation also permits this court to reject an interpretation requiring us to conclude Marilyn did a "useless thing" by listing the properties in the will for no reason at all. *See Coleman*, 350 S.W.3d at 203; *Rogers*, 2007 WL 1258763, at *2.

Accordingly, we cannot conclude the trial court misconstrued the will.[5]

### CONCLUSION

We affirm the trial court's order.

Luz Elena D. Chapa, Justice

---

[5] Clifton further contends the trial court failed to file findings of fact and conclusions of law, and the failure should be understood to have presumptively harmed him. However, "where the facts are undisputed and the only matters presented on appeal are legal issues to be reviewed de novo, the failure to file findings of fact and conclusions of law is harmless error." *Landerman v. State Bar of Texas*, 247 S.W.3d 426, 430–31 (Tex. App.—Dallas 2008, pet. denied) (quoting *Rollins v. Am. Exp. Travel Related Servs. Co., Inc.*, 219 S.W.3d 1, 5 (Tex. App.—Houston [1st Dist.] 2006, no pet.)) (internal quotation marks omitted). Here, because the only question is whether the trial court correctly applied the law, any error in the trial court's failure to file findings of fact is harmless. *See id.*