Opinion filed March 31, 2022



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00263-CV

_____

**ENDEAVOR ENERGY RESOURCES, LP AND ARAH EVELYN HOLCOMB, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE AND SUCCESSOR TO E.D. HOLCOMB, Appellants**

**V.**

**TRUDY JANE ANDERSON TESTAMENTARY TRUST, BY AND THROUGH ITS TRUSTEE CHARLES THOMAS ANDERSON, Appellee**

**On Appeal from the 118th District Court**
**Martin County, Texas**
**Trial Court Cause No. 7473**

## O P I N I O N

This appeal concerns the construction of a 2007 correction deed and a dispute over title to a mineral estate located in Martin County, Texas. The origin of this dispute involves a 2003 real property transaction between Appellant Holcomb and her husband (E.D.), and Appellee Anderson and his wife (Trudy). Appellant Endeavor is the owner of an oil and gas leasehold interest covering the subject

property. The primary issue to be determined concerns the validity of the correction deed, which Appellants contend cured a mutual mistake—the failure to reserve all mineral rights and interests to the Holcombs—in the parties' original deed to convey real property, as well as the capacity in which the correction deed was executed.

After extensive discovery, the parties to this appeal filed competing motions for summary judgment. The trial court granted Appellee's motion, denied Appellants' motions, and ultimately concluded that the correction deed was invalid because it failed to substantially comply with the statutory requirements that govern the execution of correction deeds. *See* TEX. PROP. CODE ANN. § 5.029 (West 2021). Appellants collectively appeal the trial court's ruling that the correction deed was invalid for failure to substantially comply with Section 5.029.

Additionally, Holcomb raises two alternative issues: (1) the trial court erred when it found that Holcomb's counterclaim to reform the original deed based on mutual mistake is barred by limitations and estoppel by deed; and (2) the trial court erred when it struck the summary judgment evidence offered by Holcomb in support of Holcomb's deed reformation counterclaim. Similarly, Endeavor also raises two alternative issues: (1) the trial court erred when it granted Appellee's motion for summary judgment and denied Endeavor's motion; and (2) the trial court abused its discretion when it struck a portion of the summary judgment evidence offered by Endeavor in support of its claims of leasehold estate ownership and adverse possession.

Because we hold that the correction deed is valid and enforceable, we reverse the judgment of the trial court and render judgment in favor of Appellants.

## I. *Factual and Procedural Background*

In 2003, E.D. and Arah Evelyn Holcomb agreed to sell a portion of the surface estate of their Martin County family ranch to Charles Thomas (Tom) Anderson and his wife, Trudy. To confirm this transaction, the Andersons and the Holcombs

2

executed a farm and ranch contract on March 31, 2003, in which (1) the Andersons acquired the surface rights only to six tracts of the Holcombs' ranch and (2) the parties expressed their intent that the Holcombs reserved to themselves all of the mineral, royalty, and executive rights and interests in their ranch.

The following month, the Holcombs and the Andersons executed a general warranty deed, which merged the six tracts that were sold to the Andersons into three.[1] Evidently, the recitals in the general warranty deed did not comport with the parties' original agreement and intent to only convey the surface estate in the merged tracts to the Andersons and to reserve all of the mineral, royalty, and executive rights and interests in the same tracts to the Holcombs.[2]

Believing that they had reserved to themselves all of the mineral rights and interests in the three merged tracts, the Holcombs later conveyed their executive

---

[1]The three tracts are described as follows: (Tract 1) "Southwest Quarter (SW/4) and Northwest Quarter of Section 68, Block A, Bauer & Cockrell Survey, Martin County, Texas, containing 320 acres more or less"; (Tract 2) "Southwest Quarter (SW/4) of Section 1, Block 35, T & P PR Co. Survey T-2-N, Martin County, Texas, containing 160 acres more or less"; and (Tract 3) "Section 39, Block 35, T-3-N, T & P PR Co. Survey, Martin County, Texas, save and except 65 acres described on Exhibit A to the General Warranty Deed."

[2]The general warranty deed is dated April 29, 2003, and recites that the Holcombs shall grant, sell, and convey the property to the Andersons, save and except the following mineral reservations: (Tract 1) "All oil, gas, and other minerals of every character in and under the herein described property, reserved in instrument recorded in Volume 184, Page 845, Deed Records of Martin County, Texas, reference to which instrument is made for all purposes"; (Tract 2) "All oil, gas, and other minerals of every character in and under the herein described property reserved in instrument recorded in Volume 75, Page 354 and Volume 93, 320, Deed Records of Martin County, Texas, reference to which instrument is here made for all purposes"; and (Tract 3) "All oil, gas, and other minerals of every character in and under the herein described property, reserved in instrument recorded in Volume 70, Page 390 and Volume 186, Page 739, Deed Records of Martin County, Texas, reference to which instrument is here made for all purposes."

These reservations failed to capture the parties' intended agreement because the instruments referenced in the reservations for Tract One and Tract Three did not sufficiently specify the parties' intended mineral reservations. For example, the Tract One reservation states that the Holcombs reserved all *reservations* contained in the referenced instrument. However, the referenced instrument—a gift mineral deed from Mr. Holcomb's parents that granted a mineral interest in Tract One to the Holcombs—does not contain any reservation of the minerals that were previously conveyed to the Holcombs. Therefore, the recitals for Tract One in the April 29, 2003 general warranty deed did not reserve the entirety of the Holcombs' mineral rights and interest in that specific tract.

3

rights to certain third parties, who then executed an oil and gas lease for the purpose of developing the minerals. Endeavor is the successor-in-interest of that lease, by way of a 2006 assignment. Further, Endeavor has been the lessee, and has operated on the property under the lease, ever since that assignment. Endeavor claims that, since it acquired the lease, Tom Anderson has executed multiple surface use agreements with Endeavor, in which the Andersons have purported to own the surface estate of the three tracts but have never claimed to own any mineral rights or interests in these tracts. Endeavor also claims that over the course of its lease operations, it has paid over $130,000 to Tom for surface damages.

The parties later realized that the reservations in the original 2003 general warranty deed did not sufficiently memorialize and comport with their agreement and intent to reserve all mineral rights and interests in the subject property to the Holcombs. Upon recognizing this discrepancy, the Holcombs and Tom executed a correction warranty deed dated March 26, 2007.[3] In the 2007 correction deed, the Holcombs and Tom recited and explained that upon its execution, they intended for it to "clarify and replace" the original 2003 general warranty deed because the original deed contained a mutual mistake. In fact, it was specifically stated in the correction deed recitals that they "intended that all minerals owned by [the Holcombs] were to be reserved" to the Holcombs and that "some question has arisen regarding whether the language of the mineral reservation accomplishes this intention." As such, and consistent with the parties' intent, the correction deed clarified that the original 2003 general warranty deed conveyed the "surface only" of the three subject tracts to the Andersons, and reserved to the Holcombs "all oil, gas, and other minerals of every character in and under" those tracts.

---

[3]Although dated March 26, 2007, the correction deed related back to and was effective as of April 29, 2003, which is the effective date of the original general warranty deed, as explained below.

Trudy did not participate in the execution of the 2007 correction deed because she had passed in September of 2006; the correction deed specifically recited that Trudy had passed after the execution of the original 2003 general warranty deed. Trudy's will appointed Tom to serve as executor of her estate. Her will also established a testamentary trust, which designated Tom as trustee[4] and sole beneficiary, and devised all of Trudy's real property to Tom, in trust. In these two capacities, Tom possessed broad powers to manage and dispose of the properties and assets of Trudy's estate and testamentary trust, which included the authority to do so for his own benefit.

A. *Powers Granted to Tom in Trudy's Will*

Trudy's will sets forth the terms of the trust agreement. It states in part:

> As to all real estate, in the event of the first of us to die, it is hereby willed, devised and bequeathed unto the survivor of us, as Trustee, to hold, use and manage on the following uses and Trusts:
>
> (A) The survivor of us to enjoy the rents, revenues and income from said real estate for and during the natural life of said survivor, and upon the death of said survivor, said property shall pass and vest in and to all of the surviving children of our marriage . . . .

Trudy's will further provided that the trust would terminate upon Tom's death, at which time the trust assets would then pass to and vest in their children, to share and share alike, in fee simple title; however, if any of their children did not survive them, their portion of the trust assets, if any, would pass to their children's descendants, per stirpes. A subsequent codicil amended this provision to provide that, if none of

---

[4]Although Trudy's will provided that the trustee was to be the surviving Anderson spouse, it also provided for the designation of other persons as trustee if the surviving spouse was or became incapable of performing his or her duties as trustee.

the Anderson children or their descendants were alive upon the termination of the trust, the trust estate would then pass to a designated charitable organization.

As set out in Trudy's will, the trust agreement granted the trustee (Tom) the power and authority "to manage and handle all of the properties passing to such Trustee, in Trust, as in the Trustee's judgment may seem best." Tom, as trustee, was granted the right and authority to invade and use the corpus of the trust estate for his own benefit "in order to maintain the same standard of living that [Tom and Trudy] enjoyed [on] the date of . . . the first of [them] to die."

Tom, as trustee, was also "specifically empowered to do any and all things necessary for the best interest of the estate" and, in so doing, "to do any and all acts, of any kind and character in handling such estate" that the other spouse could have done if alive, except where specifically limited by the trust's terms. Finally, the trust granted to Tom all powers conferred under the Texas Trust Act and provided that "[t]he acts of [the] Trustee in handling any of the properties of the Trust Estate shall be conclusive and binding upon all persons, and in the absence of fraud shall not be subject to contest" by any interested person. Nevertheless, the trust agreement did limit Tom's authority as trustee in one respect—for any "sale or *conveyance*" of real estate that belonged to the trust estate, the Andersons' children (John Thomas and Charles Jarrett) were required to join in the sale.

Tom's authority and powers as executor of Trudy's estate are similarly broad. Trudy's will grants to the executor (Tom) the "full and absolute power and authority to sell and dispose of, under such terms as [he] . . . may seem most appropriate, any or all of the properties of our estates" for the purposes of either paying the estate's debts and expenses, or "to effect an appropriate division or other purpose" of her will.

In 2019, Appellee filed the underlying trespass to try title suit and sought to invalidate the correction deed, claiming that Tom's signature on the correction deed

had no legal effect and did not bind the trust.[5]  Rather, Appellee alleged that for the 2007 correction deed to be effective, both Tom *and* his children were required to sign it; however, the signatures of the Anderson children were never obtained.  As a consequence, Appellee claimed that (1) the correction deed was never properly executed and (2) the trust, therefore, maintained title to the disputed mineral interests.

In response to Appellee's suit, Holcomb counterclaimed and asserted that the 2007 correction deed (1) was a valid instrument of title that cured the parties' uncontroverted mutual mistake in the original 2003 general warranty deed's mineral reservations and (2) granted Holcomb title to the disputed mineral interests. Holcomb further claimed that this result was consistent with the parties' original agreement and in accordance with their intent and past conduct.

Ultimately, all parties to this appeal filed competing motions for summary judgment. Appellee contended that the correction deed was invalid and requested that the trial court award him title to the disputed mineral interests.  Appellants sought a declaration that the correction deed was valid.  In the alternative, Holcomb requested a reformation of the original 2003 general warranty deed to correct the mutual mistake; Endeavor sought a declaration that it had acquired fee simple title to the leasehold estate of the subject property through adverse possession.

The trial court granted Appellee's motion for summary judgment, denied Appellants' motions, and concluded, *inter alia*, that the correction deed was invalid

---

[5]We note that E.D. Holcomb had passed prior to Appellee filing suit.

because it did not substantially comply with Section 5.029 of the Property Code.[6] This appeal followed.[7]

## II. *Standard of Review – Summary Judgment*

We review summary judgments de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). If a traditional summary judgment motion is filed, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment in the movant's favor as a matter of law. TEX. R. CIV. P. 166a(a), (c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). If the movant meets its summary judgment burden, the burden shifts to the nonmovant, who must raise a genuine issue of material fact that would preclude the grant of summary judgment. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 510–11 (Tex. 2014).

To determine if a genuine issue of material fact exists, we review the evidence in the light most favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019); *Knott*, 128 S.W.3d at 215. We credit evidence favorable to the nonmovant if reasonable jurors could do so, and we disregard contrary evidence unless reasonable jurors could not. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The evidence raises a genuine issue of material fact if reasonable and fair-minded jurors

---

[6]The trial court granted Appellee's motion "except as to Defendant Endeavor['s] . . . counterclaim for breach of contract" and denied Holcomb's motion by denying her counterclaim for reformation "as a matter of law based on [the Trust's] affirmative defenses without reaching the merits of the mutual-mistake claim."

[7]Appellee also filed a "conditional cross-appeal" in which he requested that, in the event we sustained any of Appellants' points regarding adverse possession or reformation, we consider whether this case should be remanded to the trial court for consideration of the merits of those claims. Because we hold that the correction deed is valid and enforceable, we need not address Appellee's conditional cross-appeal. *See* TEX. R. APP. P. 47.1

8

could differ in their conclusions in light of all the summary judgment evidence presented. *Goodyear Tire & Rubber Co v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

When the parties file competing summary judgment motions and the trial court grants one motion and denies the others, as in this case, we review all of the summary judgment evidence, determine the issues presented, and render the judgment that the trial court should have rendered. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017) (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)).

### III. *Applicable Law*

The disposition of this appeal turns on the application of Section 5.029 to the 2007 correction deed because a decision in favor of Appellants on that issue would conclusively confirm Holcomb's title in and to the disputed mineral interests. Appellants argue on appeal that the correction deed substantially complied with Section 5.029 and is, therefore, valid and enforceable. The parties to this appeal have also challenged, seemingly in the alternative, the trial court's rulings concerning other claims, counterclaims, and defenses that have been raised, the disposition of which, we note, would be predicated on a determination by this court that the correction deed is invalid.

The Correction Instrument statutes, including Section 5.029, were enacted by the legislature in 2011 in response to a 2009 Texas Supreme Court decision in which the court held that correction deeds should not be used to convey additional, separate properties that were not otherwise described in the original deed. *See* PROP. §§ 5.027–.31; *Tanya L. McCabe Trust v. Ranger Energy LLC*, 531 S.W.3d 783, 794–95 (Tex. App—Houston [1st Dist.] 2016, pet. denied) (discussing enactment); *see also Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 750 (Tex. 2009). These statutes permit the use of correction instruments to make both material and nonmaterial corrections under certain circumstances, including the conveyance

of additional, separate properties that were previously prohibited by *Myrad*. *See* PROP. § 5.029(a)(1)(C). Section 5.029 specifically addresses material corrections and provides, in relevant part:

> (a) In addition to nonmaterial corrections, including the corrections described by Section 5.028, the parties to the original transaction *or the parties' heirs, successors, or assigns, as applicable* may execute a correction instrument to make a material correction to the recorded original instrument of conveyance, including a correction to:
>
> > (1) add:
> >
> > > (A) a buyer's disclaimer of an interest in the real property that is the subject of the original instrument of conveyance;
> >
> > . . . .
>
> **(b)  A correction instrument under this section must be:**
>
> **(1) executed by each party to the recorded original instrument of conveyance the correction instrument is executed to correct or, *if applicable, a party's heirs, successors, or assigns*;** . . . .

(Emphasis added). Therefore, for a correction deed to be a valid and enforceable instrument, Section 5.029 requires that either the original parties to the transaction *or* the heirs, *successors*, or assigns *of an original party*, if applicable, must execute it.

The Correction Instrument statutes also contain a retroactive component: correction instruments that are recorded prior to the statutes' effective date of September 1, 2011, are required only to "substantially comply" with the provisions of Section 5.029. *See* PROP. § 5.031. This retroactive component applies here because the correction deed before us was executed *and* recorded in 2007. Nevertheless, the Correction Instrument statutes do not define what constitutes substantial compliance. Generally, that phrase means that one has performed the

"essential requirements" of a statute, and it excuses deviations which do not seriously hinder the legislature's purpose in imposing such requirements. *See AIC Mgmt. Co v. AT&T Mobility, LLC*, No. 01-16-00896-CV, 2018 WL 1189865, at *9 (Tex. App—Houston [1st Dist.] Mar. 8, 2018, pet. denied) (mem. op.) (quoting *U. Lawrence Boze' & Assocs., P.C. v. Harris Cty. Appraisal Dist.*, 368 S.W.3d 17, 27 (Tex. App.—Houston [1st Dist.] 2011, no pet.)) (interpreting Section 5.029); *see also Edwards Aquifer Auth. v. Chem. Lime, Ltd.*, 291 S.W.3d 392, 403 (Tex. 2009) ("[S]ubstantial compliance with a statute means compliance with its essential requirements.").

After the briefs in this appeal were submitted, the Texas Supreme Court issued its decision in *Broadway National Bank v. Yates Energy Corp.*, in which it determined when an "heir, successor, or assign" is required to join in the execution of a correction deed under Section 5.029(b)(1). *Broadway Nat'l Bank v. Yates Energy Corp.*, 631 S.W.3d 16 (Tex. 2021). In *Yates Energy*, the court held that Section 5.029 permits the original parties to a conveyance to execute a valid correction deed even when the original grantees no longer own the property at issue. *Id.* at 23–27. In so holding, the court rejected the argument (which is advanced by Appellee) that all current interest owners in the property must execute the correction deed. *Id.* at 24–25. Thus, an "heir, successor, or assign" is required to execute a correction deed only if an original party to the transaction is unavailable. *Id.* at 25–26.

Notably, the issue in *Yates Energy* was whether, when all original parties to the transaction had executed the correction deed, the current interest owners who were not original parties to the transaction were also required to join in the execution of the correction deed. *Id.* Although the court in *Yates Energy* clearly held that Section 5.029 is satisfied when all original parties to the transaction execute the correction deed, in the case before us, all original parties to the 2003 general

warranty deed did *not* sign the 2007 correction deed because Trudy had passed before the correction deed was executed and recorded. Therefore, we must determine, for purposes of Section 5.029, who is Trudy's "heir, successor, or assign." Importantly, the court in *Yates Energy* defined "successor" in a footnote: "In the context of this statute, the term 'successors' fills the gap between 'heirs' and 'assigns,' covering entities and legal representatives who succeed an original party other than as an heir or assign." *Id.* at 25 n.5.

## IV. *Analysis*

Appellants assert that (1) Tom is Trudy's sole successor under Section 5.029 and (2) he executed the 2007 correction deed in his capacity as her successor; therefore, the correction deed, at a minimum, substantially complied with the applicable provisions of Section 5.029 and is, therefore, valid and enforceable. Appellee avers that (1) Trudy's will granted Tom a life estate in the trust assets; (2) the two Anderson children are remaindermen to the life estate devised by Trudy to Tom; (3) regarding real property, Trudy's will restricted Tom's authority both as executor and as trustee in a variety of ways; (4) Tom signed the correction deed in his individual grantee capacity only; and (5) the correction deed failed to substantially comply with Section 5.029 because, in addition to Tom, the Anderson children, as Trudy's successors, were also required to execute the correction deed. We agree with Appellants.

### A. *Tom is Trudy's Sole Successor Under Section 5.029*

According to the arguments advanced by the parties, Trudy's successor or successors under Section 5.029 are either (1) Tom only or (2) Tom *and* the two Anderson children. Because the Anderson children do not have a vested interest in either Trudy's estate or the property held in the testamentary trust, we hold that Tom is Trudy's sole successor under, and for purposes of, Section 5.029.

12

As we have said, Trudy's will created a testamentary trust and set forth the terms of the trust. Therefore, we must determine in what manner the testamentary trust affects the interests held by Tom and the Anderson children. The primary purpose of will construction is to ascertain the testator's intent and to enforce that intent to the extent allowed by law. *Knopf v. Gray*, 545 S.W.3d 542, 545 (Tex. 2018) (citing *Sellers v. Powers*, 426 S.W.2d 533, 536 (Tex. 1968)). We examine the instrument's language, consider its provisions as a whole, and attempt to harmonize them so as to give effect to the will's overall intent. *Id.* (citing *Stephens v. Beard*, 485 S.W.3d 914, 916 (Tex. 2016)).

To ascertain the nature of a real property conveyance, we begin with the precept that an estate is conveyed or devised in fee simple unless the estate is otherwise limited by express terms. *See* PROP. § 5.001(a). Here, Trudy's will devised "all real estate" to Tom, as trustee; the devise contained no express limitation. Moreover, it is clear from the terms of the trust as set out in Trudy's will that Tom's interest is more than simply a life estate; he is not bound by the constraint against alienation that is placed upon life tenants. *Cf. Knopf*, 545 S.W.3d at 546 (construing a life estate where the testator granted the land subject to limitations that the grantee does not sell the land, that he take care of it, and that the land be passed to his children).

It cannot be disputed that the trust was created for the benefit of Tom, with all income and potentially the corpus to be utilized, at his discretion, for his benefit. No person other than Tom holds an interest in the trust or its assets because the trust terminates upon his passing. In fact, there is no guarantee that the Anderson children would *ever* receive the remainder of the trust estate, if by chance any remained upon Tom's passing. When the trust terminates, the remaining corpus, if any, shall be distributed to the Anderson children, if surviving, or to their descendants, if surviving. If no Anderson children or their descendants survive, the trust estate

13

would be distributed to a designated charitable organization. Both codicils to Trudy's will confirm this: each codicil amended the section of her will that set out the terms of the trust to designate alternative beneficiaries to whom the trust estate would pass if the Anderson children had not survived.

Trudy's will also expressly empowers Tom as trustee to invade the trust and dispose of the entire trust corpus. Although the Anderson children's joinder is required (if they are of adult age) if there is a sale or *conveyance* of any real property held by the trust, Tom is nonetheless authorized to sell or convey any such real property. If a sale of real property did occur, the proceeds of the sale would be invested in the corpus of the trust estate, which Tom is authorized to invade and consume. Further, Tom is authorized, in his discretion, to "manage and handle" all of the trust's properties. It is clear that Tom, as trustee, is under no obligation to preserve any remainder interest. Therefore, under these terms, he cannot be a life tenant. *See Knopf*, 545 S.W.3d at 547 ("[I]nherent in a life estate is a restraint on alienation of the remainder interest.").

Tom's broad powers as executor and trustee permitted him to execute the 2007 correction deed as Trudy's sole successor because he possessed all decision-making authority regarding both Trudy's estate and the trust assets, with the exception of any *conveyance* of real property held by the trust, which, as we discuss below, is not an impediment to the execution of a valid correction deed.

B. *Tom Validly Executed the Correction Deed as Trudy's Successor*

Appellee argues that, even if Tom is Trudy's sole successor under Section 5.029, he failed to validly execute the 2007 correction deed because (1) he did not have the authority to do so and (2) when he signed the correction deed, he did so only in his individual capacity. In support of his first argument, Appellee points out that the trust agreement explicitly limits Tom's authority as trustee with respect to any sale or conveyance of real property held by the trust. It is true that the

joinder and consent of the Anderson children is required under the trust agreement for any such action. However, we cannot agree, as Appellee suggests, that Tom exceeded his authority as trustee or executor of Trudy's estate when he executed the 2007 correction deed.

Appellee further contends that *Yates Energy* stands for the proposition that a correction deed is itself a conveyance, and not merely a clarification of the original instrument of conveyance. This argument misses the mark. In fact, the language in the Correction Instrument statutes that reference the purpose and effect of a correction deed clearly precludes the contention advanced by Appellee, as the court in *Yates Energy* has already noted. *See Yates Energy*, 631 S.W.3d at 26–27. We concur.

The execution of a correction deed itself, without more, does not constitute a sale or *conveyance* of real property. In fact, a correction deed conveys nothing; it simply "replaces and is a substitute for the original instrument." PROP. § 5.030(b); *see Yates Energy*, 631 S.W.3d at 29 ("If the Trustee and other parties to the original conveyance have properly executed the correction, they have themselves replaced the original deed and substituted the correction."). A permissible purpose of a correction instrument is to provide the parties an avenue for correcting an "ambiguity or error that relates to the description of *or extent of the interest conveyed*." PROP. § 5.027(a) (emphasis added); *Yates Energy*, 631 S.W.3d at 26. Here, the 2007 correction deed conveyed nothing; it merely clarified the scope of the conveyances and mineral reservations as recited in the parties' 2003 general warranty deed. Moreover, a signed and recorded correction deed has a retroactive effect; it is deemed to be "effective as of the effective date of the recorded original instrument of conveyance." PROP. § 5.030(a)(1); *see Yates Energy*, 631 S.W.3d at 22.

The policy underlying this statutory scheme is similarly clear: if all original parties to a transaction (or an original party's heir, successor, or assign) agree that,

15

because of a mistake, the original conveyance failed to accurately capture the purpose and intent of their transaction, they may later correct the mistake by utilizing the avenues and remedies that are provided in the Correction Instrument statutes. *See Yates Energy*, 631 S.W.3d at 27. As our supreme court has stated, this correction-by-agreement remedy is a nonjudicial process that is designed to promote efficiency in non-adversarial circumstances. *See id.* at 29 ("By enacting Property Code section 5.029, the Legislature gave parties the ability to correct material mistakes in their deeds without resorting to lawsuits for reformation or rescission."). Such is the case here.

In support of his second argument, Appellee asserts that although Tom signed the 2007 correction deed, the signature block for Tom's signature did not specifically recite the capacity in which he had signed. Therefore, Appellee contends, Tom signed the correction deed only in his individual capacity, and not in his capacity as trustee or executor of Trudy's estate. We disagree.[8]

A similar question was presented in *Lockhart v. Chisos Minerals*, an appeal transferred from our court to the El Paso Court of Appeals. *See Lockhart as Tr. Of Lockhart Family Bypass Tr. v. Chisos Minerals, LLC*, 621 S.W.3d 89 (Tex. App.— El Paso 2021, pet. denied). We find *Lockhart* to be instructive. In that case, Lockhart, who had been designated executor of her father's estate and trustee of the family bypass trust, executed three deeds: an original conveyance and two correction deeds. *Id.* at 95–96. Lockhart signed each instrument twice—once in her individual capacity, and once in her capacity as executor. *Id.* at 95–96. She did not, however, sign the deeds in her capacity as trustee. *Id.* Although the second correction deed

---

[8]Although the parties dispute whether, upon Trudy's passing, Trudy *and* Tom's interests in the property at issue passed to the testamentary trust or whether Tom still held his fifty percent community property interest individually, this "disagreement" does not change our analysis as to the correction deed's validity. Moreover, because we conclude, as explained below, that Tom signed the correction deed in *all* of his possible capacities, this "disagreement" would not affect the disposition of this appeal.

specifically addressed and ratified the conveyance of a certain mineral interest, Lockhart later disputed the ownership of that interest on the grounds that that interest was an asset of the family bypass trust. *Id.* at 96–97, 102. As relevant to our appeal, Lockhart argued that because she did not sign any of the deeds in her capacity as trustee, the deeds were ineffective to convey the disputed interest. *Id.* at 102.

The *Lockhart* court examined the correction deed at issue and concluded that the trustee's failure to indicate her capacity as trustee on the correction deed at the time it was executed did not conclusively invalidate the deed or render it ineffective as to any interest held by or to be distributed by the family trust. *Id.* at 102–04. Rather, the court held that whether a trust's interest is passed pursuant to a deed's recitals is essentially a matter of deed construction and interpretation. *Id.* at 103–04 (citing *West 17th Res., LLC v. Pawelek*, 482 S.W.3d 690, 694–95 (Tex. App.— San Antonio 2015, pet. denied).

The court in *Lockhart* relied extensively on *Pawelek* for its analysis. *See id.* In *Pawelek*, the San Antonio Court of Appeals rejected the argument that "when a grantor does not disclose her capacity 'as trustee' on the deed, the deed does not convey any interest that the grantor holds in trust." *Pawelek*, 482 S.W.3d at 693. Rather, the *Pawelek* court, like the court in *Lockhart*, held that the resolution of this question focused on deed construction. *Id.* at 694–95. Because the deed's granting clause in *Pawelek* conveyed "all" of the subject property, the court determined that the deed conveyed both the interests held by the signee in her individual capacity and her capacity as trustee. *Id.* at 695. We agree with this reasoning.

In order to ascertain the true intention of the parties, we review a trial court's construction of a deed de novo. *See Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743 (Tex. 2020); *King Operating Corp. v. Double Eagle Andrews, LLC*, 634 S.W.3d 483, 490 (Tex. App.—Eastland 2021, no pet.). Here, the correction deed before us clearly shows that the parties intended that it represent and bind both Tom and

Trudy's interests. We cannot conceive of a contrary interpretation or construction. *See Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017) ("When construing an unambiguous deed, our primary duty is to ascertain the intent of the parties from all of the language within the four corners of the deed."). The 2007 correction deed unambiguously recites that (1) Tom and Trudy were the original grantees, (2) Trudy had passed away the year before the correction deed was executed and recorded, and (3) the parties intended for the correction deed to clarify and replace the original 2003 general warranty deed to show the true intent of their original agreement—that the Holcombs had reserved all of the mineral rights and interests in the subject property and had conveyed only the surface rights in the merged tracts to the Andersons.

Further, the correction deed's signature block shows that Tom signed on behalf of the plural "Grantees." Therefore, consistent with the holdings in *Lockhart* and *Pawelek*, Tom's act of signing under these circumstances, combined with the correction deed's recitations, shows that he executed the correction deed in every possible capacity: as executor, trustee, and individually. *See Lockhart*, 621 S.W.3d at 102–04; *Pawelek*, 482 S.W.3d at 695. Moreover, by doing so, the parties, including Tom, expressly intended to bind all of the interests of the original grantees who were involved in and a party to the original 2003 transaction.

Tom is Trudy's sole successor within the meaning of Section 5.029 because he alone possesses the title in and the authority to manage her estate and the testamentary trust's assets. Therefore, because Tom was Trudy's sole successor when the 2007 correction deed was executed and recorded, neither the signatures nor the assent of the Anderson children were necessary to effectively execute or validate the correction deed. In this case, as Trudy's sole successor, Tom validly executed the correction deed in every possible capacity (individually, as executor, and as trustee).

Further, because a correction deed is not a conveyance, Tom did not exceed his authority under the trust when he executed the correction deed in 2007. As we have noted, the 2007 correction deed conveyed nothing. It simply accomplished its statutory purpose: it clarified the original intent of the parties—the conveyance of only the surface estate in the subject property to the Andersons and the reservation of the disputed mineral rights and interests to the Holcombs. As such, Holcomb shall retain all mineral rights and interests in the subject property, and Endeavor's leasehold interest is not adversely affected.

Based on the record before us, we hold that the 2007 correction deed substantially complied with the requirements of Section 5.029 and is, therefore, a valid and enforceable instrument. The trial court erred in holding otherwise.[9] Accordingly, we sustain Appellants' primary issue. Because our holding on this issue necessarily disposes of this appeal, we need not reach the remaining issues raised by the parties. *See* TEX. R. APP. P. 47.1.

## V. *This Court's Ruling*

For the reasons stated above, we reverse the judgment of the trial court and render judgment for Appellants.

W. STACY TROTTER

March 31, 2022                                     JUSTICE

Panel consists of: Bailey, C.J.,
Trotter, J., and Wright, S.C.J.[10]

Williams, J., not participating.

---

[9]We note that the trial court did not have the benefit of the *Yates Energy* decision when it ruled on the parties' competing motions for summary judgment.

[10]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.