# Supreme Court of Texas

No. 21-0205

Michelle Elise Parker Jordan,

*Petitioner*,

v.

Ola Kathleen Parker, Independent Executor of the Estate of
J. Loyd Parker, III, Deceased, and Allison Renee Parker,

*Respondents*

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

**Argued September 22, 2022**

JUSTICE BLAND delivered the opinion of the Court.

We examine three generations of property transfers to resolve this dispute over ownership of some ranchland.

The facts read like a law school exam question. A father devised his estate to his widow for life, with the remainder upon her death to his children, including his son. The father granted his widow complete control over the estate's assets during her lifetime, including the power to sell estate property and to redirect a child's remainder interest to others. Among the estate's assets was a partial interest in land known

as the Cottonwood Ranch. Other owners of the ranch included the father's widow. The widow eventually conveyed her separate interest in the ranch to their son and daughter.

A few years later, while his mother was still living, the son conveyed to his daughters "all of my right, title and interest in and to" the ranch. The question presented in this case is whether the son gifted a remainder interest in his father's estate property when he conveyed his present interest in the same property without expressly reserving any remainder interest.

Applying the rule in *Clark v. Gauntt*,[1] we conclude that the son did not convey his remainder interest in the estate property. The son's remainder interest was in his father's estate overall, not a particular piece of property, and any property interest from the estate that the son might eventually inherit was subject to complete divestment during his mother's lifetime. At the time the son conveyed his present interest to his daughters, his mother was living, and she had complete control over the estate's assets. In such circumstances, the property interest in the ranch that the son would eventually inherit through his father's will amounted to no more than an expectancy. As the court of appeals correctly held, a grantor conveys an expectancy interest only through a clear manifestation of the grantor's intent to do so. We therefore affirm its judgment.

---

[1] 161 S.W.2d 270, 273 (Tex. [Comm'n Op.] 1942).

## I

Ola Kathleen Parker (Kathy) brings this trespass-to-try-title and deed-reformation action against her daughters, Michelle Elise Parker Jordan (Elise) and Allison Renee Parker. The parties seek to determine whether J. Loyd Parker III (Loyd III)—Kathy's husband and Elise and Allison's father—conveyed a remainder interest in his father's estate's ownership of the Cottonwood Ranch when he gifted "all of my right, title and interest in and to" the ranch to his daughters.

The parties do not dispute the facts. They disagree, however, about the nature of the interest Loyd III obtained through his father's will before his mother died and whether Loyd III conveyed this interest to his daughters when he conveyed the present interest he owned at the time he made the gift.

## A

A bit of history explains the ranch's ownership as it existed when Loyd III gifted his interest to his daughters. During the mid-1950s, J.B. Young and Loyd Jinkens owned the ranch in equal, undivided one-half interests.[2] Young died in 1956, leaving his daughter, Ruthie Young Parker, an undivided one-sixth interest.

A year later, Ruthie and her husband, J. Loyd Parker Jr. (Loyd Jr.), together purchased the undivided Jinkens interest. As a result, Ruthie and Loyd Jr. owned an undivided one-half of the Cottonwood Ranch as community property. Ruthie owned an additional one-sixth of the ranch as her inherited separate property.

---

[2] The ranch is located in Reeves and Culberson Counties.

Loyd Jr. died in 1985, leaving Ruthie as his widow. Loyd Jr.'s will conveyed his entire estate to Ruthie as a life estate, with a remainder in equal shares to their two children, Loyd III and Pamela Parker Clifton. Loyd Jr.'s will gave Ruthie extensive powers, including the right to "buy, sell, mortgage, lease . . . [or] exchange" any property in the estate and "deal with, manage, and control the assets as if she owned them in fee simple," without consultation with any remainder beneficiary. In addition, the will gave Ruthie "a special power to alter the equal devolution through this will to [Loyd Jr.'s] children or their issue." That special power "to alter the devolution of the remainder interest shall prevail over any disposition a child of [Loyd Jr.] makes in his remainder interest."

After Loyd Jr.'s death, Ruthie owned the following shares in the Cottonwood Ranch:

- a one-sixth interest acquired from her father in 1956;
- a one-fourth interest from the former community estate acquired upon Loyd Jr.'s death; and
- a one-fourth life estate interest under Loyd Jr.'s will.

In 1990, Ruthie conveyed her former community interest in the Cottonwood Ranch to Loyd III and Pamela in equal shares. In 1993, Ruthie signed a correction deed to clarify that the 1990 deed conveyed her one-fourth former community property interest only, not the life estate created by Loyd Jr.'s will.

After Ruthie's 1990 conveyance, Loyd III held two discrete interests:

- a one-eighth fee simple interest in the ranch, and

- a one-eighth remainder in Loyd Jr.'s entire estate, subject to Ruthie's life estate and powers of divestment.

In 1998, Loyd III conveyed "all of my right, title and interest in and to"[3] the Cottonwood Ranch to his daughters, Elise and Allison, in equal shares. The 1998 deed is the focus of the parties' dispute.

After Loyd III executed the 1998 deed, the family behaved as if Elise and Allison each owned a one-sixteenth interest in the Cottonwood Ranch and Loyd III continued to hold a remainder interest in the one-eighth that was part of Ruthie's life estate and under her control.

Ruthie died in 2006. She never exercised her power to sell the estate's interest in the ranch, nor did she divest Loyd III of any of his remainder interest in the estate.

Loyd III died in 2014 and left his estate to his wife, Kathy.

## B

Almost two years after Loyd III's death, Elise claimed a one-eighth interest in the Cottonwood Ranch instead of one-sixteenth. Elise asserted that, in addition to his present interest in the ranch, her father's 1998 deed gifted to her and her sister his eventual remainder interest following Ruthie's life estate.

To resolve this claim, Kathy sued Elise and Allison for trespass to try title, deed reformation, and adverse possession. Allison agrees with Kathy that the 1998 deed did not convey her father's remainder interest in the ranch, and thus she does not oppose Kathy's suit.

---

[3] Quotations have been altered from the original text of the deed, in which the quoted language appears in capital letters.

The trial court denied summary judgment to Kathy and granted partial summary judgment to Elise on Kathy's trespass-to-try-title and deed-reformation claims. The parties agreed to sever and abate the adverse possession claim pending this appeal, and the judgment recites that it is a final and appealable judgment.

The court of appeals reversed, applying the rule of *Clark v. Gauntt* that a grantor does not convey an expectancy or future interest unless the instrument "clearly manifests the intention of the prospective heir to sell, assign or convey his expectancy or future interest."[4] The court of appeals acknowledged that a remainder interest is a future interest capable of being conveyed; however, it observed, the law requires "clear and express language demonstrating the grantor's intent to do so."[5] Because the 1998 deed does not refer to any future interest, the court of appeals concluded that Loyd III did not convey one.[6] We granted Elise's petition for review.

## II

To construe a will, we ascertain the testator's intent from the language found within the four corners of the document.[7] Similarly, in construing an unambiguous deed, we ascertain the intent of the parties from the language of the deed.[8] In either case, we "construe language

---

[4] 632 S.W.3d 108, 116 (Tex. App.—El Paso 2021) (quoting *Clark*, 161 S.W.2d at 273).

[5] *Id.* at 120.

[6] *Id.*

[7] *ConocoPhillips Co. v. Ramirez*, 599 S.W.3d 296, 301 (Tex. 2020).

[8] *Wenske v. Ealy*, 521 S.W.3d 791, 792 (Tex. 2017).

according to its 'plain, ordinary, and generally accepted meaning' unless the instrument directs otherwise."[9] The construction of an unambiguous deed or will presents a question of law that we review de novo.[10]

On cross motions for summary judgment, each party must establish that it is entitled to judgment as a matter of law.[11] When the trial court grants one motion and denies the other, the reviewing court determines all questions presented and renders the judgment that the trial court should have rendered.[12]

## A

A remainder is a "future interest arising in a third person . . . who is intended to take after the natural termination of the preceding estate."[13] A remainder interest is either vested or contingent.[14] "A remainder is vested where there is a person in being who would have an immediate right to the possession upon the termination of the intermediate estate."[15] A remainder interest is contingent when there is "uncertainty as to the persons who are to take."[16] A remainder is

---

[9] *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 747 (Tex. 2020) (quoting *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 764 (Tex. 2018)); *see also Knopf v. Gray*, 545 S.W.3d 542, 545 (Tex. 2018).

[10] *Wenske*, 521 S.W.3d at 794 (citing *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991)); *Knopf*, 545 S.W.3d at 545.

[11] *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex. 2018).

[12] *Id.*

[13] *Remainder*, Black's Law Dictionary (11th ed. 2019).

[14] *See Caples v. Ward*, 179 S.W. 856, 857–58 (Tex. 1915).

[15] *Id.*

[16] *Id.* at 858.

7

defeasible, or subject to divestment, if an event subsequent to the conveyance might terminate the interest.[17] A vested remainder is indefeasible if "the remainderman is certain to acquire a present interest sometime in the future and will be entitled to retain the interest permanently."[18] An expectancy, which is not a future interest at all, is merely "a hope or a possibility of title" that one "expects to inherit."[19]

The parties differ in their understanding of Loyd III's interest in Loyd Jr.'s estate. Elise describes the interest as a vested remainder, but she concedes that Ruthie's powers made it defeasible. Kathy argues that Loyd III's interest is better understood as a contingent remainder, given Ruthie's control over the estate. Kathy further points out that Loyd III's interest in Loyd Jr.'s entire estate is different in nature from a specific interest in certain estate property.

We agree that Ruthie's powers under Loyd Jr.'s will foreclose the possibility that Loyd III held a vested remainder in the Cottonwood Ranch at the time he conveyed his present interest in it. At that time, Ruthie not only possessed a life estate in the entire estate, she also had the power to "buy, sell, mortgage, lease . . . [or] exchange" any property in the estate and "deal with, manage, and control the assets as if she owned them in fee simple" without consultation with any remainder beneficiary. And, if Ruthie "substantially deplet[ed] her fee simple

---

[17] *Remainder*, Black's Law Dictionary (11th ed. 2019); *see also Edds v. Mitchell*, 184 S.W.2d 823, 830 (Tex. [Comm'n Op.] 1945) (describing the interest of a beneficiary to a life insurance policy as vested but defeasible because the insured could change the beneficiary designation).

[18] *Remainder*, Black's Law Dictionary (11th ed. 2019).

[19] *Clark v. Gauntt*, 161 S.W.2d 270, 272 (Tex. [Comm'n Op.] 1942).

estate," she could invade the corpus "to support her in her customary manner of living."

Finally, the will gave Ruthie the power to alter Loyd III's remainder share in the estate:

> My spouse shall have a special power to alter the equal devolution through this will to my children or their issue by diverting part of a child's share to other children or a child's issue or spouse. . . . [That power] shall prevail over any disposition a child of mine makes in his remainder interest.

In light of these powers, Loyd III's remainder interest in the estate in general created no certainty at the time of the gift to his daughters that any particular piece of estate property would ever belong to him. Ruthie could sell, gift, or mortgage any piece of the estate—including the Cottonwood Ranch. Ruthie also could devolve Loyd III's share of the estate on another family member or even spend down the entirety of the corpus as future circumstances unfolded.

In sum, Ruthie had complete power to decide which estate property, if any, Loyd III might one day own. We need not decide whether Loyd III's interest in the entire estate is better characterized as vested subject to divestment or contingent, because the will grants Loyd III no more than an expectancy in the Cottonwood Ranch or any other particular asset.

**B**

In *Clark v. Gauntt*, the Commission of Appeals addressed whether a grantor could convey an expectancy interest through general language granting "[a]ll my right, title and interest in" a piece of real

9

property.[20] In that case, the property had been the community property of the grantor's parents. When her mother died, the grantor, the couple's only child, inherited an undivided one-half interest in the property. She then mortgaged the property, securing it with a deed that included the above language. While a foreclosure suit was pending, the grantor's father died intestate, and she inherited the remaining one-half interest in the property. The mortgagee then asserted a claim to the entire property, arguing that the deed had conveyed "all" the grantor's interest in the property, including her expected inheritance.

The Court rejected that claim, holding that the grantor had not conveyed her expectancy through the broad language of the deed. An expectancy of inheritance is "nothing more than a hope or a possibility of title" and includes "no present right or interest in the property."[21] Thus, the Court concluded, a deed or contract cannot convey "an expectancy or future interest unless it clearly manifests the intention of the prospective heir to sell, assign or convey his expectancy or future interest."[22] Because the law historically disfavored such conveyances, the grantor's intent to convey an expectancy or future interest must be manifest.[23] The rule persists because it protects grantors from

---

[20] 161 S.W.2d at 272–73. Adopted opinions of the Commission of Appeals are "given the same force, weight, and effect as the opinions written by the members of the Supreme Court itself." *Nat'l Bank of Com. v. Williams*, 84 S.W.2d 691, 692 (Tex. 1935).

[21] *Clark*, 161 S.W.2d at 272.

[22] *Id.* at 273.

[23] *Id.* at 272–73.

inadvertently conveying expectancies or future interests they may not know they hold and never intended to convey.

Our holding in *Terrell v. Graham*, almost forty years after *Clark*, reflects *Clark*'s continued vitality.[24] In that case, two brothers each owned an undivided one-half interest in a tract of land.[25] The brothers executed reciprocal deeds, each conveying to the other "all" the disputed property to "take effect and become absolute on my death."[26] We read the reciprocal deeds to retain a life estate in the grantor and convey an "estate in expectancy" to the other brother.[27] Upon the first brother's death, the surviving brother's estate became possessory; he also regained the estate following his own life estate by operation of the deed, and the two estates merged into a single fee simple interest.

In *Terrell*, we acknowledged *Clark* and concluded that its application did not defeat the brothers' reciprocal deeds.[28] The deeds in question expressly incorporated Article 1296 of the Revised Civil Statutes, which at the time read: "An estate or freehold or inheritance may be made to commence in futuro, by deed or conveyance, in like manner as by will."[29] This direct reference in the deeds to the statute

---

[24] 576 S.W.2d 610, 611 (Tex. 1979).

[25] *Id.*

[26] *Id.*

[27] *Id.* at 612.

[28] *Id.*

[29] *Id.* at 611 & n.1 (quoting Act of 1925, 39th Leg., R.S., S.B. 84 (repealed 1984)) ("This deed is written under Article 1296 R.C.S. of Texas, and shall take effect and become absolute on my death.").

permitting creation and conveyance of a future estate "clearly manifest[ed] the intention" to convey it, thus satisfying the *Clark* rule.

Elise argues for the inverse of the *Clark* rule: a grantor must expressly reserve a future interest to avoid conveying it. She relies on *Piranha Partners v. Neuhoff*[30] and *Cockrell v. Texas Gulf Sulphur Co.*[31] for the uncontroversial principle that general language conveying "all" of an interest conveys all of the interest. An important distinction, however, is that both *Piranha Partners* and *Cockrell* involved presently owned interests that were apparent from the chain of title at the time of the conveyance.[32] We agree with Elise that "[a]ll means all."[33] But as we said in *Cockrell*, "it is fundamental that a warranty deed will pass all of the estate *owned by the grantor at the time of the conveyance* unless there are reservations or exceptions which reduce the estate conveyed."[34] In this case, in contrast, Loyd III did not presently own the disputed interest.

Elise further argues that the *Clark* rule should not apply to vested future interests, despite the opinion's broad language including those interests. Because Loyd III's interest in the property gained through his father's will was no more than an expectancy, however, we need not

---

[30] 596 S.W.3d 740 (Tex. 2020).

[31] 299 S.W.2d 672 (Tex. 1956).

[32] *Piranha Partners*, 596 S.W.3d at 745–46 (analyzing the scope of an assignment of presently owned overriding mineral interest); *Cockrell*, 299 S.W.2d at 673–74 (determining the effect of a subsequent conveyance on previously executed mineral leases).

[33] *Davis v. Mueller*, 528 S.W.3d 97, 102 (Tex. 2017).

[34] *Cockrell*, 299 S.W.2d at 675 (emphasis added).

12

decide whether *Clark* applies to a fully vested, indefeasible future interest in a particular piece of property. We note, however, that each of Elise's cited cases involves a conveyance that expressly referred to the instrument creating the future interest and therefore satisfied *Clark*.[35]

Finally, Elise argues that the phrase "all of my right, title and interest" in the Cottonwood Ranch manifested Loyd III's intent to include the disputed future interest. This argument ignores the facts of *Clark*, in which "[a]ll my right, title and interest in and to" the described property conveyed the grantor's present interest only. It did not convey the expectancy interest the grantor later inherited.[36] Loyd III used nearly identical language. "All" means all that the grantor owns in the property at the time of the conveyance.[37] In 1998, Loyd III did not "own" any interest in the Cottonwood Ranch through Loyd Jr.'s will. Rather,

---

[35] *See Parker v. Blackmon*, 553 S.W.2d 623, 623–24 (Tex. 1977) (sons' conveyance of "[a]ll of our right, title and interest in the estate of [mother], of any property of whatsoever kind or wheresoever situate that would be bequeathed or devised to us by her will as a result of her death" included a right to proceeds from the future sale of mother's home when that right had been specifically bequeathed to them in her will); *Jinkins v. Jinkins*, 522 S.W.3d 771, 776 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (father's conveyance of "all property subject to disposition by [father] under the joint will of [grandfather] and [grandmother]" included father's remainder created by grandparents' joint will); *Hamilton v. Keller*, 148 S.W.2d 1011, 1013 (Tex. App.—Eastland 1941, no writ) (grandsons' conveyance of "all their right, title, interest, claim and demand of every kind and character whatsoever in and to all the property of [grandmother] in which we had interest under the provisions of said will" included remainder created by grandmother's will).

[36] *Clark*, 161 S.W.2d at 272–73.

[37] *Cockrell*, 299 S.W.2d at 675. We decline to comment on the effect of such language in the distinguishable situation where the grantor holds *only* an expectancy and no other interest in the property.

13

he had an expectancy interest only, which is no ownership interest at all.

The deed gifting Loyd III's interest to his daughters does not refer to Loyd Jr.'s estate or to any expectancy Loyd III had from that estate in the Cottonwood Ranch. Because nothing in the 1998 deed manifests Loyd III's intent to convey his future inheritance, we hold that it did not pass through the 1998 deed.

\*     \*     \*

When he gifted his present interest to his daughters, Loyd III had no more than an expectancy interest that he might inherit another part of the Cottonwood Ranch from his father's estate. A grantor may convey such an interest only through a clearly manifested intent to do so. Because the 1998 deed does not refer to Loyd III's remainder in his father's estate, nor to any expectancy interest in the Cottonwood Ranch from that estate, Loyd III did not convey the disputed interest to his daughters. Accordingly, we affirm the judgment of the court of appeals.

Jane N. Bland
Justice

**OPINION DELIVERED:** December 30, 2022

14